COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-08-250-CV

 

 

IN THE INTEREST OF A.R., R.T.R.,                                                         

AND L.R.M., CHILDREN

                                                    

 

 

                                                                                                        

 

                                              ------------

 

            FROM THE 393RD
DISTRICT COURT OF DENTON COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

This is an appeal from an order terminating
appellant=s parental rights to her three
children.  In four issues, appellant
challenges the legal and factual sufficiency of the evidence to support each of
the four grounds upon which appellee, the Texas Department of Family and
Protective Services, sought termination. 
We affirm.








Background
Facts

The Department removed appellant=s three
children from her care after she was arrested for possession of marijuana found
during a traffic stop.  One of her
children, R.T.R., was in the car with her at the time,[2]
and appellant said she was on her way to pick up A.R.  The officer who stopped appellant testified
that he smelled a Afresh@ and Astrong@ odor of
burnt marijuana as he approached the driver=s side
window.  He searched appellant=s purse
and found a small baggie of marijuana, empty baggies, and a pipe with
methamphetamine residue inside; he also found baggies and scales in the car.[3]  Appellant was charged with and convicted of
possession of less than two ounces of marijuana.

The Department filed a petition to terminate
appellant=s rights to all three children,
alleging that appellant

knowingly placed or
knowingly allowed the children to remain in conditions or surroundings which
endanger the physical or emotional well-being of the children;

 








engaged in conduct or
knowingly placed the children with persons who engaged in conduct which
endangers the physical or emotional well-being of the children;

 

. . . .

 

constructively abandoned
the children who have been in the permanent or temporary managing
conservatorship of the Department or an authorized agency for not less than six
months and: (a) the Department or authorized agency has made reasonable efforts
to return the children to the mother; (b) the mother has not regularly visited
or maintained significant contact with the children; and (c) the mother has
demonstrated an inability to provide the children with a safe environment;
[and]

 

failed to comply with the
provisions of a court order that specifically established the actions necessary
for the mother to obtain the return of the children who have been in the
permanent or temporary managing conservatorship of the Department for not less
than nine months as a result of the children=s removal from the parent under Chapter 262 for
the abuse or neglect of the children. 

 

See Tex. Fam. Code Ann. ' 161.001(1)(D),
(E), (N), (O) (Vernon Supp. 2008).  A
jury found that all four of these grounds for termination had been met and that
termination was in the children=s best
interest.  Accordingly, the trial court
signed an order terminating appellant=s
parental rights to all three children and naming the Department permanent
managing conservator.  Appellant timely
perfected this appeal.








Issues
on Appeal

Appellant challenges the legal
and factual sufficiency of the evidence to support all four grounds for
termination found by the jury.  She does
not challenge the best interest finding.

Standard of Review








A parent=s rights
to Athe
companionship, care, custody, and management@ of his
or her children are constitutional interests Afar more
precious than any property right.@  Santosky v. Kramer, 455 U.S. 745, 758B59, 102
S. Ct. 1388, 1397 (1982); In re M.S., 115 S.W.3d 534, 547 (Tex.
2003).  AWhile
parental rights are of constitutional magnitude, they are not absolute.  Just as it is imperative for courts to
recognize the constitutional underpinnings of the parent-child relationship, it
is also essential that emotional and physical interests of the child not be
sacrificed merely to preserve that right.@  In re C.H., 89 S.W.3d 17, 26 (Tex.
2002).  In a termination case, the State
seeks not just to limit parental rights but to erase them permanentlyCto
divest the parent and child of all legal rights, privileges, duties, and powers
normally existing between them, except for the child=s right
to inherit.  Tex. Fam. Code Ann. '
161.206(b) (Vernon Supp. 2008); Holick v. Smith, 685 S.W.2d 18, 20 (Tex.
1985).  We strictly scrutinize
termination proceedings and strictly construe involuntary termination statutes
in favor of the parent.  Holick,
685 S.W.2d at 20B21; In re M.C.T., 250
S.W.3d 161, 167 (Tex. App.CFort
Worth 2008, no pet.).

In proceedings to terminate the parent‑child
relationship brought under section 161.001 of the family code, the petitioner
must establish one ground listed under subdivision (1) of the statute and must
also prove that termination is in the best interest of the child.  Tex. Fam. Code Ann. '
161.001; In re J.L., 163 S.W.3d 79, 84 (Tex. 2005).  Both elements must be established;
termination may not be based solely on the best interest of the child as
determined by the trier of fact.  Tex.
Dep=t of Human Servs. v. Boyd, 727
S.W.2d 531, 533 (Tex. 1987).

Termination decisions must be supported by clear
and convincing evidence.  Tex. Fam. Code
Ann. ''
161.001, 161.206(a).  Evidence is clear
and convincing if it Awill produce in the mind of the
trier of fact a firm belief or conviction as to the truth of the allegations
sought to be established.@  Id. ' 101.007
(Vernon 2002).  Due process demands this
heightened standard because termination results in permanent, irrevocable
changes for the parent and child.  In
re J.F.C., 96 S.W.3d 256, 263 (Tex. 2002); see In re J.A.J.,
243 S.W.3d 611, 616 (Tex. 2007) (contrasting standards for termination and
modification).








In reviewing the evidence for legal sufficiency
in parental termination cases, we must determine whether the evidence is such
that a factfinder could reasonably form a firm belief or conviction that the
grounds for termination were proven.  In
re J.P.B., 180 S.W.3d 570, 573 (Tex. 2005). 
We must review all the evidence in the light most favorable to the
finding and judgment.  Id.  This means that we must assume that the
factfinder resolved any disputed facts in favor of its finding if a reasonable
factfinder could have done so.  Id.  We must also disregard all evidence that a
reasonable factfinder could have disbelieved. 
Id.  We must consider,
however, undisputed evidence even if it is contrary to the finding.  Id. 
That is, we must consider evidence favorable to termination if a
reasonable factfinder could, and disregard contrary evidence unless a
reasonable factfinder could not.  Id.

We must therefore consider all of the evidence,
not just that which favors the verdict. 
Id.  But we cannot weigh
witness credibility issues that depend on the appearance and demeanor of the
witnesses, for that is the factfinder=s
province.  Id. at 573, 574.  And even when credibility issues appear in
the appellate record, we must defer to the factfinder=s determinations
as long as they are not unreasonable.  Id.
at 573.








In reviewing the evidence for factual sufficiency,
we must give due deference to the factfinder=s findings
and not supplant the verdict with our own. 
In re H.R.M., 209 S.W.3d 105, 108 (Tex. 2006).  We must determine whether, on the entire
record, a factfinder could reasonably form a firm conviction or belief that the
parent violated subsections D, E, N, or O of section 161.001(1).  In re C.H., 89 S.W.3d at 28.  If, in light of the entire record, the
disputed evidence that a reasonable factfinder could not have credited in favor
of the finding is so significant that a factfinder could not reasonably have
formed a firm belief or conviction in the truth of its finding, then the
evidence is factually insufficient.  H.R.M.,
209 S.W.3d at 108.

Sufficiency
of Evidence to Support Termination Under Section 161.001(1)(E)

Appellant contends that the
evidence is insufficient to support termination under subsections D and E
because the Department failed to show a nexus between the drug use and any negative
effect on appellant=s children.  Specifically, appellant says that because
there is no evidence she ever used drugs in front of her children, there is no
evidence to support D and E as grounds. 
We will address the sufficiency of the evidence under subsection E
first.








When reviewing sufficiency under section
161.001(1)(E), we must determine whether sufficient evidence exists that the
endangerment of the child=s well‑being was the
direct result of the parent=s
conduct, including acts, omissions, or failures to act.  In re M.N.G., 147 S.W.3d 521, 536
(Tex. App.CFort Worth 2004, pet. denied) (op.
on reh=g).  The term Aendanger@ as used
in section 161.001(1)(E) means to expose to loss or danger, or to
jeopardize.  Boyd, 727 S.W.2d at
533; M.N.G., 147 S.W.3d at 536. 
Termination under subsection E must be based on more than a single act
or omission; a voluntary, deliberate, and conscious course of conduct by the
parent is required.  In re M.R.,
243 S.W.3d 807, 819 (Tex. App.CFort
Worth 2007, no pet.); M.N.G., 147 S.W.3d at 536.  But it is not necessary that the conduct be
directed at the child or that the child actually suffer injury.  Boyd, 727 S.W.2d at 533; M.N.G.,
147 S.W.3d at 536.  The specific danger
to the child=s well-being may be inferred
from the parent=s conduct alone.  Boyd, 727 S.W.2d at 533; M.N.G.,
147 S.W.3d at 536.

As a general rule, conduct that subjects a child
to a life of uncertainty and instability endangers the physical and emotional
well‑being of a child.  M.N.G.,
147 S.W.3d at 536;  In re R.W.,
129 S.W.3d 732, 739 (Tex. App.CFort
Worth 2004, pet. denied).  Drug use and
its effect on a parent=s life and her ability to parent
may establish an endangering course of conduct. 
R.W., 129 S.W.3d at 739.








Appellant admitted that she had been using drugs
off and on since she was twenty.  She
stopped using while pregnant with A.R. and R.T.R., but she started again after
R.T.R. was born.  She stopped again while
pregnant with L.R.M., but she started using again after his birth.  Her fourth childCwho was
born after A.R., R.T.R., and L.R.M. were removed from appellantCtested
positive for methamphetamine at birth.[4]

Appellant admitted to driving her children to
school while Aup@ on
methamphetamine, and she agreed that this conduct was dangerous.  She explained that Aup@ did not
mean that she had just used but that she had not yet gone to sleep after using;
she said she typically stayed awake for two days after using
methamphetamine.  She also admitted to Asometimes@ being
around her children after using.  But
appellant additionally testified that she did not use drugs in front of her
children; appellant and her children lived with her parents, so she would leave
the children with her parents or her brother[5]
while she went to do drugs.[6]  Sometimes, L.R.M. would stay with his
paternal grandparents, and at other times, appellant left the children with a
paternal uncle and his family.  Further,
appellant admitted to selling drugs; she acknowledged that such an activity was
potentially dangerous to her children.  








The jury could also have reasonably inferred that
appellant had very recently smoked, or was actively smoking, marijuana while
driving with R.T.R. in the vehicle on the day the police stopped her.  Additionally, the officer who stopped
appellant testified that when he saw her, he was in the parking lot of a known Adrug
house@ as a
result of a prior call.  He stopped
appellant because he saw her pull into the parking lot, stop, back out, and
turn back the way she had been going.  He
testified that he and another officer were visible to someone pulling into the
parking lot.  Thus, the jury could also
have reasonably inferred that appellant was going to the drug house with R.T.R.
in the car and that she changed her mind when she saw the officers.[7]

Appellant failed to appear for numerous scheduled
drug tests that the Department requested she take.  She blamed her failure to appear for some of
the tests on a lack of transportation and at least one on the theft of her
purse and enclosed identification.








At the time of trial, A.R. and R.T.R.=s father
was incarcerated.  CPS had twice
investigated allegations that he had sexually abused both of his children.  Appellant has not divorced him,[8]
but she has had children with two other men, and she was living with another
man at the time of trial, her third boyfriend since the removal.  Both L.R.M.=s father
and appellant=s boyfriend at the time of trial
have criminal records.  The more recent
boyfriend=s record includes a conviction
for enticing a child.  Thus, the evidence
shows that appellant has a history of unstable relationships with men.

Appellant was unemployed throughout most of this
case; she relied on her father and grandmother to support her.  At the time of trial, she was living with her
new boyfriend and managing a restaurant they had opened together, but she
testified that she was not yet making any money.








The record shows not only repeated and continuing
drug use by appellant, but also other conduct that would contribute to an
unstable and potentially dangerous lifestyle for her children.  Accordingly, we conclude and hold, based on
the appropriate standards of review, that the evidence is legally and factually
sufficient to support termination under subsection E.  See, e.g., In re T.N.S., 230 S.W.3d
434, 438B39 (Tex.
App.CSan
Antonio 2007, no pet.); In re K.M.B., 91 S.W.3d 18, 25 (Tex. App.CFort
Worth 2002, no pet.) (noting that drug use need not occur in child=s
presence to be considered endangering behavior).  We overrule appellant=s second
issue.

Because a petitioner need establish only one of
the acts or omissions enumerated under subdivision (1) of section 161.001, we
need not address appellant=s other
issues regarding whether the evidence is legally and factually sufficient to
support the jury=s findings under subsections
(D), (N), and (O).  See Tex. Fam.
Code Ann. ' 161.001(1)(D); Tex. R.
App. P. 47.1; In re S.B., 207 S.W.3d 877, 886 (Tex. App.CFort
Worth 2006, no pet.).

Conclusion

Having overruled appellant=s second
and dispositive issue, we affirm the trial court=s
judgment.

 

TERRIE LIVINGSTON

JUSTICE

 

PANEL:  LIVINGSTON, DAUPHINOT,
and GARDNER, JJ.

DELIVERED:  January 8, 2009











[1]See Tex. R. App. P. 47.4.





[2]The officer who arrested
appellant testified that R.T.R. appeared fine and was not upset.





[3]Appellant also said there
was a half-smoked joint in the car, which she willingly gave to the officer.  But she said she had not been smoking
it.  According to appellant, the pipe,
scales, and baggies were in the console of her car and belonged to a drug
dealer friend of hers, who had been in the car.





[4]This baby was adopted shortly
after her birth.  She is not involved in
this appeal, nor was she involved in the underlying termination trial.





[5]Appellant=s brother has also been
arrested for methamphetamine possession.





[6]Appellant said she did
drugs between one to two times per week.





[7]Appellant testified that
the road was blocked, so she pulled into the parking lot to turn around and go
another way.  The officer who stopped and
arrested appellant also testified that after her arrest, he saw appellant four
or five times at drug houses in the city, but appellant testified that she was
there because she had agreed to become an informant.





[8]Appellant testified that
she could not afford a divorce.