

**COURT OF APPEALS**
**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

**NO. 2-09-460-CV**

IN THE INTEREST OF D.A., A CHILD

------------

FROM THE 323RD DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I. INTRODUCTION

Appellant Terrance D. appeals the trial court's order terminating his parental rights to his daughter, D.A.[2]   In three issues, Terrance argues that section 161.002(b)(3) of the Texas Family Code violates his rights under the United States and Texas constitutions and that the evidence is legally and factually insufficient to show that he constructively abandoned D.A.  We will affirm.

### II. FACTUAL BACKGROUND

---

[1] ...  *See* Tex. R. App. P. 47.4.

[2] ...  To protect the privacy of the children involved, we identify them by initials only.  *See* Tex. R. App. P. 9.8(b); Tex. Fam. Code Ann. § 109.002(d) (Vernon 2008).

Terrance is D.A.'s alleged biological father. Lisza A. is D.A.'s mother. Lisza is also the mother of A.D.A., A.D.A., and R.J.A. Terrance is not the father of the other children.

Lisza was married to Nathaniel J. in January 2008. Later that same month, Nathaniel went to jail; he was released in October 2008. Lisza got pregnant with D.A. while Nathaniel was incarcerated.

D.A. was born on January 30, 2009. On February 1, 2009, Latandra Hampton, a Child Protective Services ("CPS") investigator, received a referral for D.A. and Lisza's other children because both D.A. and Lisza tested positive for cocaine when D.A. was born. CPS then removed all of the children from Lisza's home and placed them in foster care.

The Texas Department of Family and Protective Services ("the Department") then filed its petition for protection of children, for conservatorship, and for termination in suit affecting the parent-child relationship. In November 2009, after being arrested for robbery, Lisza signed an Affidavit of Relinquishment of Parental Rights for all of her children, including D.A. Terrance never filed any document in this matter nor did he personally appear. The trial court, however, appointed an attorney ad litem to represent Terrance.

On November 24, 2009, the trial court signed an order terminating the parental rights of Terrance and Lisza as to D.A. The trial court found by clear and convincing evidence that Terrance did not register with the paternity registry and that after due

2

diligence, his whereabouts could not be located by the Department. The trial court found that Terrance constructively abandoned D.A. and that it was in D.A.'s best interest to terminate Terrance's parental rights. *See* Tex. Fam. Code Ann. § 161.001(1)(N) (Vernon Supp. 2010). This appeal followed.

### III. BURDEN OF PROOF AND STANDARD OF REVIEW

A parent's rights to "the companionship, care, custody, and management" of his or her children are constitutional interests "far more precious than any property right." *Santosky v. Kramer*, 455 U.S. 745, 758–59, 102 S. Ct. 1388, 1397, 71 L. Ed.2d 599 (1982); *In re M.S.*, 115 S.W.3d 534, 547 (Tex. 2003). "While parental rights are of constitutional magnitude, they are not absolute. Just as it is imperative for courts to recognize the constitutional underpinnings of the parent-child relationship, it is also essential that emotional and physical interests of the child not be sacrificed merely to preserve that right." *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002). In a termination case, the State seeks not just to limit parental rights but to erase them permanently—to divest the parent and child of all legal rights, privileges, duties, and powers normally existing between them, except for the child's right to inherit. Tex. Fam. Code Ann. § 161.206(b) (Vernon 2008); *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). We strictly scrutinize termination proceedings and strictly construe involuntary termination statutes in favor of the parent. *Holick*, 685 S.W.2d at 20–21; *In re M.C.T.*, 250 S.W.3d 161, 167 (Tex. App.—Fort Worth 2008, no pet.).

3

In proceedings to terminate the parent-child relationship brought under section 161.001 of the family code, the petitioner must establish one ground listed under subdivision (1) of the statute and must also prove that termination is in the best interest of the child. Tex. Fam. Code Ann. § 161.001; *In re J.L.,* 163 S.W.3d 79, 84 (Tex. 2005). Both elements must be established; termination may not be based solely on the best interest of the child as determined by the trier of fact. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987).

Termination decisions must be supported by clear and convincing evidence. Tex. Fam. Code Ann. §§ 161.001, 161.206(a). Evidence is clear and convincing if it "will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* § 101.007 (Vernon 2008). Due process demands this heightened standard because termination results in permanent, irrevocable changes for the parent and child. *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002); *see In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007) (contrasting standards for termination and modification).

In reviewing the evidence for legal sufficiency in parental termination cases, we must determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction that the grounds for termination were proven. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). We must review all the evidence in the light most favorable to the finding and judgment. *Id.* This means that we must assume that the factfinder resolved any disputed facts in favor of its finding if a

4

reasonable factfinder could have done so. *Id.* We must also disregard all evidence that a reasonable factfinder could have disbelieved. *Id.* We must consider, however, undisputed evidence even if it is contrary to the finding. *Id.* That is, we must consider evidence favorable to termination if a reasonable factfinder could and disregard contrary evidence unless a reasonable factfinder could not. *Id.*

We must therefore consider all of the evidence, not just that which favors the verdict. *Id.* But we cannot weigh witness credibility issues that depend on the appearance and demeanor of the witnesses, for that is the factfinder's province. *Id.* at 573, 574. And even when credibility issues appear in the appellate record, we must defer to the factfinder's determinations as long as they are not unreasonable. *Id.* at 573.

In reviewing the evidence for factual sufficiency, we must give due deference to the factfinder's findings and not supplant the judgment with our own. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). We must determine whether, on the entire record, a factfinder could reasonably form a firm conviction or belief that the parent violated the relevant conduct provisions of section 161.001(1) and, if challenged, that the termination of the parent-child relationship would be in the best interest of the child. *C.H.*, 89 S.W.3d at 28. If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or

5

conviction in the truth of its finding, then the evidence is factually insufficient. *H.R.M.*, 209 S.W.3d at 108.

## IV. EVIDENTIARY SUFFICIENCY OF CONSTRUCTIVE ABANDONMENT FINDING

In his second and third issues, Terrance argues that the evidence is legally and factually insufficient to prove that he constructively abandoned D.A. Specifically, Terrance argues that the evidence is legally and factually insufficient to show that the Department made reasonable efforts to return D.A. to Terrance and that Terrance demonstrated an inability to provide a safe environment for D.A.

The elements of constructive abandonment are (1) a child has been in the permanent or temporary managing conservatorship of the Department or an authorized agency for not less than six months, (2) the Department or authorized agency has made reasonable efforts to return the child to the parent, (3) the parent has not regularly visited or maintained significant contact with the child, and (4) the parent has demonstrated an inability to provide the child with a safe environment. Tex. Fam. Code Ann. § 161.001(1)(N); *In re M.R.J.M.*, 280 S.W.3d 494, 505–06 (Tex. App.—Fort Worth 2009, no pet.) (op. on reh'g). If there is no evidence of one or more of these elements, then the finding of constructive abandonment must fail. *See M.R.J.M.*, 280 S.W.3d at 505. Terrance challenges the sufficiency of the evidence on only the second and fourth grounds.

### A. Reasonable Efforts to Return the Child to the Parent

6

Returning a child to a parent under section 161.001(1)(N) does not necessarily mean that the child has to be physically delivered to the individual. *See In re D.S.A.*, 113 S.W.3d 567, 573 (Tex. App.—Amarillo 2003, no pet.). "[R]easonable efforts" to reunite parent and child can be satisfied through the preparation and administration of a service plan. *See id.* at 572–73; *In re K.M.B.*, 91 S.W.3d 18, 25 (Tex. App.—Fort Worth 2002, no pet.). Terrance argues that the Department did not make reasonable efforts to return D.A. because the Department never developed a service plan for him.

The Fourteenth Court of Appeals addressed this issue in *In re B.S.T.*, 977 S.W.2d 481 (Tex. App.—Houston [14th Dist.] 1998), *rev'd on other grounds by In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002). In *B.S.T.*, after the trial court terminated appellant's parental rights, appellant filed an appeal claiming that he was never given a service plan and that no reasonable efforts were made to return the children to him. *Id.* at 486. The court of appeals stated that

> [o]ur review of the record reveals that [the mother] was provided with a Family Service Plan, but there is no evidence appellant was provided a separate plan by TDPRS. The record indicates [the mother] did not know appellant's whereabouts at the time the children were taken into custody. A diligent search was made to locate appellant. When he was located, and after his release from prison, he was advised of visitation and did visit with his children twice, but he made no further efforts to be involved. Caseworkers advised him he should sign an affidavit of paternity, but he never did so. A caseworker for TDPRS testified that all reasonable efforts were made to return the children to the parents. We believe this evidence is sufficient to support termination under subsection (N).

7

*Id.*

Here, Hampton testified that after D.A. was removed from Lisza's home, she contacted Terrance by telephone. She stated that during the phone call, Terrance told her that he was not D.A.'s father. She testified that she told Terrance to go to the courthouse to receive paperwork about the case. During the conversation, Terrance did not ask for DNA evidence regarding his paternity nor did he ask to see D.A. Hampton stated that she did not have any other contact with Terrance, that she did not attempt to contact him at his home address, and that she did not send him any correspondence.

Additionally, Oneeka Chilton, a CPS caseworker, testified that she developed a service plan for Lisza and her husband Nathaniel. She further stated that it was her understanding that Terrance was the father of D.A. She testified, however, that Terrance never visited with the children and that he never called her regarding D.A. Chilton said that she attempted to call Terrance at his home but that the phone had been disconnected. Further, Chilton testified that two service attempts were made on Terrance at two different addresses but that CPS could not serve him. Chilton stated that Terrance had not shown an ability to care for or support D.A.

Further, Lisza testified that she last had contact with Terrance before she was incarcerated but that she did not know what month that was. She stated that she had "heard of" Terrance quite a few times that year. Lisza said that her mother has

8

had contact with Terrance while she has been incarcerated. She stated that she did not know Terrance's last address.

Lisza testified that Terrance knew that she was pregnant with D.A. She further stated that Terrance attempted to care for her and D.A. while she was pregnant and after D.A. was born. She stated that Terrance knew that D.A. had been removed from her home by CPS. Although Terrance asked her for information on whom to contact to get custody of D.A., she did not know if he ever followed through and contacted CPS. Additionally, Lisza testified that Terrance did not make any attempts to visit D.A. Lisza stated that Terrance was aware that he could have been in court on the day of the trial and that she told Terrance how to contact the CPS worker.

It is apparent from the record that the Department made all reasonable efforts to return D.A. to Terrance. The Department contacted Terrance, but Terrance did not take any action to visit or get custody of D.A. Furthermore, a diligent search was made to locate Terrance. Terrance disconnected his phone, and neither Lisza nor the Department knew how to reach him. Additionally, the Department attempted to serve Terrance at two different addresses.

We hold that the evidence is legally and factually sufficient to prove that the Department made reasonable efforts to return D.A. to Terrance. *See* Tex. Fam. Code Ann. § 161.001(1)(N)(i); *B.S.T.*, 977 S.W.2d at 486.

**B.      Demonstrated Inability to Provide a Safe Environment for the Child**

Terrance argues that the Department presented "no evidence concerning the environment that Appellant would provide for the child." However, the record does not contain any indication that Terrance wanted D.A. to live with him; instead, Terrance's acts show the opposite. The Department contacted Terrance, but Terrance stated that he was not D.A.'s father. Additionally, Terrance never visited with D.A. after she was born and before his parental rights were terminated. Although Terrance argues that he was in contact with D.A.'s maternal grandmother while D.A. was in a foster home, there is no evidence that Terrance met with D.A., offered to pay for D.A.'s necessities while she was in foster care, or contacted the Department to try to get custody of D.A.

Accordingly, the evidence establishes Terrance's inability to provide D.A. with any environment, much less a safe environment. Thus, the evidence is legally and factually sufficient as to the "safe environment" element of constructive abandonment. *See* Tex. Fam. Code Ann. § 161.001(1)(N)(iii); *see also In re T.M.*, No. 02-09-145-CV, 2009 WL 5184018, at *4–5 (Tex. App.—Fort Worth Dec. 31, 2009, pet. denied) (mem. op.) (holding evidence legally and factually sufficient to support inability to provide safe environment finding when father failed to complete service plan, did not attempt to find a place for children to live, and did not give foster mother money to care for children).

Accordingly, we hold that the evidence is legally and factually sufficient to support the trial court's constructive abandonment finding.[3] Thus, we overrule Terrance's second and third issues.  Additionally, having overruled Terrance's second and third issues, we need not address his first issue.  *See* Tex. R. App. P. 47.1.

## V. CONCLUSION

Having overruled Terrance's second and third issues, we affirm the trial court's order terminating the parent-child relationship between Terrance and D.A.


                                                    BILL MEIER
                                                    JUSTICE

PANEL:  DAUPHINOT, GARDNER, and MEIER, JJ.

DELIVERED:  September 16, 2010

---

[3]... Terrance does not challenge the trial court's best interest finding.