

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

## NO. 2-07-170-CV

IN THE INTEREST OF M.C.T., A CHILD

------------

## FROM THE 158TH DISTRICT COURT OF DENTON COUNTY

------------

## OPINION

------------

### I.  INTRODUCTION

Appellant Tina A. appeals the termination of her parental rights to her son, M.C.T.  In three points, Appellant argues that the evidence is legally and factually insufficient to support the termination order, that she was denied effective assistance of counsel, and that family code section 263.405(i) violates her right to due process.  We will affirm.

## II. FACTUAL AND PROCEDURAL BACKGROUND

M.C.T., Appellant's biological son, is an emotionally disturbed and educationally and developmentally delayed twelve-year-old boy. Appellant has two other sons, J.T., who is sixteen, and N.T., who is older than M.C.T. but younger than J.T. Johnnie T. is the alleged biological father of M.C.T., J.T., and N.T.[1]

On or about January 25, 2006, police discovered M.C.T., who was ten years old, wandering the streets after 11:00 p.m. Appellant was in Florida and initially contended that she had left M.C.T. in the care of a person named "Rick," but later claimed to have left M.C.T. in his father's care. Appellant's mother and sister refused to pick up M.C.T., and Appellant did not return from Florida for a few days. Texas Department of Family and Protective Services ("TDFPS") removed M.C.T. from Appellant's home and placed him with a foster family. TDFPS returned M.C.T. to Appellant's care in August 2006 but re-removed him on November 9, 2006, and placed him with a second foster family. Between November 2006 and late April 2007, the time of trial, M.C.T. was admitted twice to the inpatient psychiatry unit at Cook Children's Hospital. M.C.T. was in Houston at a residential treatment center during trial.

---

[1]Johnnie T. voluntarily relinquished his parental rights to M.C.T.

Rebecca Ash, a psychotherapist, testified that she began individual counseling with Appellant at the end of March 2006 and counseled Appellant's family from August 2006 until TDFPS re-removed M.C.T. in November 2006. Ash reasoned that J.T., N.T., and M.C.T. are "very" difficult to handle and described Appellant's family as "extremely dysfunctional" with a lot of chaos and physical and verbal aggression among the family members. M.C.T. reported to Ash that J.T. and N.T. regularly "physically abuse[d]" him and that Appellant never spent any time with him. Ash opined that M.C.T. did not feel safe at home because of daily roughhousing between the boys and physical and verbal aggression directed at M.C.T. by J.T. and N.T. Nothing that Ash observed in the counseling sessions indicated that Appellant exercised control over the children, and Appellant denied there being a problem in protecting her children from the abuse and minimized the problems faced by her children. Ash concluded that Appellant's home was not a safe environment for M.C.T., stating that she supported the termination of Appellant's parental rights to M.C.T., which she believes would be in M.C.T.'s best interest.

Marvin Jones, a family therapist at Cook Children's Hospital, testified that M.C.T. had been admitted to the hospital because he was a danger to himself and to others; M.C.T. pushed a foster sibling into a railing, ran away from his foster home, and made statements that he wanted to harm himself. Jones

testified that M.C.T. did not know his date or place of birth and that he experienced difficulty with "sequence," which was not normal for a child of his age. He recounted that M.C.T. told him that Appellant abandoned him, that Appellant went to Mexico relatively recently without him, that "he was pretty much on his own" at home, that he did not feel safe at home with Appellant and his brothers, and that M.C.T. and his brothers "were pretty well left to do what they wanted to do." Jones concluded that M.C.T. does, however, do well in a structured and stable environment and that he needs "fairly intensive" supervision, therapy, and educational development. He agreed that "it would be a detriment to him if he did not get those things." Jones opined that it is not in M.C.T.'s best interest to return to an environment like he was in while living with Appellant.

Angela Batson, a licensed professional counselor, counseled M.C.T. after TDFPS removed M.C.T. from Appellant's home the second time. Batson agreed that M.C.T. is "aggressive" and "destructive," that his relationships "for the most part are combative," and that he requires "intense supervision." M.C.T. told Batson that there were no rules at home and that he could do whatever he wanted to do. Batson opined that it would be detrimental to M.C.T.'s well-being and not in his best interest to live in a home with no supervision.

M.C.T.'s second foster mom testified that she had the impression there was no structure at Appellant's home and that M.C.T did whatever he wanted to do. She agreed that M.C.T. has some "very serious" behavioral problems—he lied, had "awful" language, destroyed and tore up things, and was "out of control" at school. M.C.T. told her that Appellant could neither take care of nor handle him and his brothers and that Appellant "would go off and leave him, or he and his brothers would just sometimes be there by" themselves. M.C.T.'s foster mom agreed that he needs intense supervision and opined that it would be "detrimental" (both developmentally and physically) to him if he was not supervised at home.

Connie McAnnally, the CASA worker who investigated M.C.T.'s case, testified that M.C.T. improved at his first foster home, but that when he returned to Appellant's care in August 2006, he "spiraled down quickly in a variety of ways, in school and in the sessions with the therapist and in [her] observations of him when [she] went to visit with him when he was living with his mom." M.C.T.'s "acting out, aggression, and violence" primarily began when he was returned to Appellant's care in August 2006. McAnnally observed M.C.T. with his older brothers. They were "very hard to control" and kind of "bouncing off the walls." McAnnally explained that Appellant left M.C.T. home frequently, that there were few rules or boundaries at home, that

5

M.C.T. "pretty much did his own thing," and that Appellant has no family or outside support to help her with the children. She recounted that M.C.T. is on "psychotropic" medication, that he needs to have his medications checked periodically, and that Appellant had missed a few of his medical appointments over the course of the investigation. McAnnally obtained police reports from the Garland Police Department showing that police were called to Appellant's residence thirteen times between March 2006 and November 2006. She testified that M.C.T. had attended eleven different elementary schools, nine prior to TDFPS's intervention, and that he is in the sixth grade but reads at a first-grade level and does mathematics at a second-grade level. McAnnally ultimately opined that it was in M.C.T.'s best interest that Appellant's parental rights be terminated.

Miranda Moughon served as a caseworker on M.C.T.'s case. She testified that Appellant did not implement the counselors' recommendations and that Appellant cannot keep M.C.T. safe or provide for his needs. Moughon was aware that M.C.T.'s siblings were "assaulting" him. She testified that a Family Based Safety Services worker observed Appellant and her children in her home and that "he observed the chaos in their home stating that he was at a loss." Moughon visited Appellant's home a few times. On one occasion, Moughon noted that a window had been broken by N.T. and that there was broken glass

and "extremely sharp" pieces of glass in the window pane. Moughon testified that it was TDFPS's opinion that Appellant's parental rights should be terminated and that termination was in M.C.T.'s best interest.

Steve A., Appellant's husband since May 2006, testified that Appellant's children respond well to their mother's discipline and that he has never seen J.T., N.T., or both put M.C.T. in a dangerous situation. Appellant testified that she can provide a safe environment for M.C.T. She did not recall that there had been fourteen referrals to CPS involving her and her children; that J.T., who has been to a psychiatric hospital and sees a psychiatrist, allegedly stabbed a teacher in 2004; or that M.C.T. made a sexual abuse outcry in 2003 after M.C.T. and J.T. had been sharing a bed.

The trial court signed an order terminating Appellant's parental rights to M.C.T., finding by clear and convincing evidence that termination was appropriate under subsections (D), (E), and (O) of family code section 161.001(1) and that termination was in M.C.T.'s best interest. *See* TEX. FAM. CODE ANN. § 161.001 (Vernon Supp. 2007). This appeal followed.

### III. SUFFICIENCY ARGUMENTS

In her first point, Appellant argues that the evidence is legally and factually insufficient to support the termination of her parental rights to M.C.T. under family code sections 161.001(1)(D), (E), and (O). She also challenges

7

the sufficiency of the evidence underlying the trial court's best interest finding. The State argues that Appellant failed to preserve her sufficiency complaints for review because she did not assert them in a timely filed statement of points or in a statement combined with a motion for new trial.[2] Alternatively, the State argues that the evidence is legally and factually sufficient to support the trial court's findings.

In a recent en banc decision, this court held that family code section 263.405(i) is void as a violation of the separation of powers provision of the Texas constitution. *See In re D.W.*, No. 2-06-00191-CV, 2008 WL 467328, at *1 (Tex. App.—Fort Worth Feb. 19, 2008, no pet. h.). We are bound to follow our own precedent, so we will consider the merits of M.C.T.'s sufficiency arguments.[3]

## A.    Standards of Review

---

[2]*See* TEX. FAM. CODE ANN. § 263.405(i) (stating that an appellate court may not consider any issue that was not specifically presented to the trial court in a timely filed statement of the points on which the party intends to appeal or in a statement combined with a motion for new trial).

[3]TDFPS also argues that Appellant failed to preserve her second and third points for appellate review because she did not comply with section 263.405(i). For the same reason that we address M.C.T.'s first point, we will address her second and third points. *See D.W.*, 2008 WL 467328, at *1.

A parent's rights to "the companionship, care, custody, and management" of his or her children are constitutional interests "far more precious than any property right." *Santosky v. Kramer*, 455 U.S. 745, 758–59, 102 S. Ct. 1388, 1397 (1982); *In re M.S.*, 115 S.W.3d 534, 547 (Tex. 2003). "While parental rights are of constitutional magnitude, they are not absolute. Just as it is imperative for courts to recognize the constitutional underpinnings of the parent-child relationship, it is also essential that emotional and physical interests of the child not be sacrificed merely to preserve that right." *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002). In a termination case, the State seeks not just to limit parental rights but to end them permanently—to divest the parent and child of all legal rights, privileges, duties, and powers normally existing between them, except for the child's right to inherit. TEX. FAM. CODE ANN. § 161.206(b) (Vernon Supp. 2007); *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). We strictly scrutinize termination proceedings and strictly construe involuntary termination statutes in favor of the parent. *Holick*, 685 S.W.2d at 20–21; *In re E.M.N.*, 221 S.W.3d 815, 820 (Tex. App.—Fort Worth 2007, no pet.).

In proceedings to terminate the parent-child relationship brought under section 161.001 of the family code, the petitioner must establish one ground listed under subdivision (1) of the statute and must also prove that termination

is in the best interest of the child. TEX. FAM. CODE ANN. § 161.001; *In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005). Both elements must be established; termination may not be based solely on the best interest of the child as determined by the trier of fact. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987).

Termination of parental rights is a drastic remedy and is of such weight and gravity that due process requires the petitioner to justify termination by clear and convincing evidence. TEX. FAM. CODE ANN. §§ 161.001, 161.206(a); *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002). This intermediate standard falls between the preponderance standard of ordinary civil proceedings and the reasonable doubt standard of criminal proceedings. *In re G.M.*, 596 S.W.2d 846, 847 (Tex. 1980); *In re C.S.*, 208 S.W.3d 77, 83 (Tex. App.—Fort Worth 2006, pet. denied). It is defined as the "measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007 (Vernon 2002).

In reviewing the evidence for legal sufficiency in parental termination cases, we must determine whether the evidence is such that a fact-finder could reasonably form a firm belief or conviction that the grounds for termination were proven. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). We must

10

review all the evidence in the light most favorable to the finding and judgment. *Id.* This means that we must assume that the fact-finder resolved any disputed facts in favor of its finding if a reasonable fact-finder could have done so. *Id.* We must also disregard all evidence that a reasonable fact-finder could have disbelieved. *Id.* We must consider, however, undisputed evidence even if it is contrary to the finding. *Id.* That is, we must consider evidence favorable to termination if a reasonable fact-finder could and disregard contrary evidence unless a reasonable fact-finder could not. *Id.*

We must therefore consider all of the evidence, not just that which favors the verdict. *Id.* But we cannot weigh witness credibility issues that depend on the appearance and demeanor of the witnesses, for that is the fact-finder's province. *Id.* at 573, 574. And even when credibility issues appear in the appellate record, we must defer to the fact-finder's determinations as long as they are not unreasonable. *Id.* at 573.

In reviewing the evidence for factual sufficiency, we must give due deference to the fact-finder's findings and not supplant the judgment with our own. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). We must determine whether, on the entire record, a fact-finder could reasonably form a firm conviction or belief that the parent violated a provision of section 161.001(1) and that the termination of the parent's parental rights would be in the best

11

interest of the child. *C.H.*, 89 S.W.3d at 28. If, in light of the entire record, the disputed evidence that a reasonable fact-finder could not have credited in favor of the finding is so significant that a fact-finder could not reasonably have formed a firm belief or conviction in the truth of its finding, then the evidence is factually insufficient. *H.R.M.*, 209 S.W.3d at 108.

**B.** **Sufficient Evidence Supports Termination Under Sections 161.001(1)(D) and (E)**

The trial court may order termination of the parent-child relationship if it finds by clear and convincing evidence that the parent has knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child. TEX. FAM. CODE ANN. § 161.001(1)(D). Endangerment is defined as exposing to loss or injury, to jeopardize. *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.). Under subsection (D), it is necessary to examine evidence related to the environment of the child to determine if the environment was the source of endangerment to the child's physical or emotional well-being. *In re D.T.*, 34 S.W.3d 625, 632 (Tex. App.—Fort Worth 2000, pet. denied). To support a finding of endangerment, the parent's conduct does not necessarily have to be directed at the child nor is the child required to suffer injury. *Boyd*, 727 S.W.2d at 533.

The trial court may order termination of the parent-child relationship if it finds by clear and convincing evidence that the parent has engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child. TEX. FAM. CODE ANN. § 161.001(1)(E). Under subsection (E), the relevant inquiry is whether evidence exists that the endangerment of the child's physical or emotional well-being was the direct result of the parent's conduct, including acts, omissions, and failures to act. *J.T.G.*, 121 S.W.3d at 125. Termination under subsection (E) must be based on more than a single act or omission; a voluntary, deliberate, and conscious course of conduct by the parent is required. *Id*.; *D.T.*, 34 S.W.3d at 634.

Because the evidence pertaining to subsections 161.001(1)(D) and (E) are interrelated, we conduct a consolidated review. *In re T.N.S.*, 230 S.W.3d 434, 439 (Tex. App.—San Antonio 2007, no pet.); *J.T.G.*, 121 S.W.3d at 126. The evidence demonstrates that Appellant often left M.C.T. at home alone. Police found M.C.T. wandering the streets after 11:00 p.m. in late January 2006. Appellant was in Florida, and no one claimed to have been responsible for watching over M.C.T. despite Appellant's insistence that it was Johnnie T.'s responsibility. M.C.T. told a counselor that Appellant once went to Mexico without him. M.C.T. also reported to multiple counselors and therapists that

13

there are no rules at home, that Appellant regularly left him home alone, that he is "pretty much on his own" at home, and that he and his brothers were essentially "left to do what they wanted to do."

The evidence shows that M.C.T. consistently experienced physical and verbal abuse and aggression from J.T. and N.T. M.C.T. reported that he does not feel safe at home in part because of regular physical abuse and assaults directed at him by his siblings. Multiple individuals described M.C.T.'s brothers as very difficult to handle or control, and one person, after having observed them, described them as "bouncing off the walls." On one occasion, N.T. shattered a window at Appellant's home, and J.T. assaulted Appellant by hitting her in the back on at least one occasion. Garland police responded to disturbances at Appellant's residence thirteen times between March 2006 and November 2006. Numerous witnesses reasoned that Appellant's home was not a safe environment for M.C.T.

Even though M.C.T. requires intense supervision, the evidence demonstrates that Appellant either experienced difficulty controlling M.C.T. and his siblings or did not exercise any control over them at all. Ash testified that nothing she observed in counseling sessions indicated that Appellant exercised control over the children, and M.C.T. told his foster mom that Appellant could neither take care of nor handle he and his brothers. M.C.T. takes medication,

14

and Appellant missed a number of appointments to have his medication checked and possibly changed.

We have thoroughly reviewed the evidence in this case. Viewing all the evidence in the light most favorable to the judgment, a fact-finder could reasonably have formed a firm belief or conviction that Appellant knowingly placed or knowingly allowed M.C.T. to remain in conditions or surroundings that endangered his physical or emotional well-being and that Appellant engaged in conduct or knowingly placed M.C.T. with persons who engaged in conduct that endangered M.C.T.'s physical or emotional well-being. *See* TEX. FAM. CODE ANN. § 161.001(1)(D), (E); *J.P.B.*, 180 S.W.3d at 573. The evidence is thus legally sufficient to support the trial court's termination findings under subsections 161.001(1)(D) and (E) of the family code. Moreover, considering the entire record, a fact-finder could reasonably form a firm conviction or belief that Appellant violated subsections 161.001(1)(D) and (E). *See C.H.*, 89 S.W.3d at 28. The disputed evidence that a reasonable fact-finder could not have credited in favor of the trial court's subsections 161.001(1)(D) and (E) termination findings is not so significant that a fact-finder could not reasonably have formed a firm belief or conviction in the truth of the challenged findings. *See H.R.M.*, 209 S.W.3d at 108. Consequently, the evidence is also factually sufficient to support the trial court's termination findings under subsections

15

161.001(1)(D) and (E). Because we have held that the evidence is legally and factually sufficient to support the trial court's subsection 161.001(1)(D) and (E) findings, we need not determine whether the evidence is sufficient to support the trial court's section 161.001(1)(O) finding. *See J.L.*, 163 S.W.3d at 84 (stating that Petitioner must establish only one ground listed under subsection 161.001(1)).

**C.    Best Interest Finding**

Prompt and permanent placement of the child in a safe environment is presumed to be in the child's best interest. TEX. FAM. CODE ANN. § 263.307(a) (Vernon 2002). There is also a strong presumption that keeping a child with a parent is in the child's best interest*. In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). Nonexclusive factors that the trier of fact in a termination case may use in determining the best interest of the child include the following:

(1)    the desires of the child;

(2)    the emotional and physical needs of the child now and in the future;

(3)    the emotional and physical danger to the child now and in the future;

(4)    the parental abilities of the individuals seeking custody;

(5)    the programs available to assist these individuals to promote the best interest of the child;

16

(6)     the plans for the child by these individuals or by the agency seeking custody;

(7)     the stability of the home or proposed placement;

(8)     the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and

(9)     any excuse for the acts or omissions of the parent.

*Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).  These factors are not exhaustive; some listed factors may be inapplicable to some cases; other factors not on the list may also be considered when appropriate.  *C.H.*, 89 S.W.3d at 27.  Furthermore, undisputed evidence of just one factor may be sufficient in a particular case to support a finding that termination is in the best interest of the child.  *Id.*  On the other hand, the presence of scant evidence relevant to each factor will not support such a finding.  *Id.*

Here, Appellant testified that she performed much, if not all of the service plan assigned to her; that she felt like she was doing everything possible to regain custody of M.C.T. when she learned that TDFPS was going to attempt to terminate her parental rights; that she has learned new techniques for disciplining her children; that she has hired a family counselor; and that she can

17

provide a safe environment for M.C.T.[4]  The evidence, however, shows that M.C.T. is emotionally disturbed, is educationally undeveloped, and requires intense supervision.  Appellant often leaves M.C.T. alone and unsupervised or alone with J.T. and N.T., siblings who regularly "physically abuse" him.  Appellant experiences serious problems controlling M.C.T. and his brothers.  Although M.C.T. opined that he would like to return to Appellant's home or be with his brothers, numerous witnesses testified that it would be detrimental to M.C.T.'s physical and emotional well-being to remain in an environment like the one at Appellant's home and that it would be in his best interest for Appellant's parental rights to be terminated.  Factors including the emotional and physical needs of M.C.T. now and in the future, the emotional and physical danger to M.C.T. now and in the future, the parental abilities of Appellant, the stability of Appellant's home, and the acts or omissions of Appellant all heavily weigh in favor of the finding that termination of Appellant's parental rights to M.C.T. is in M.C.T.'s best interest.  *See Holley*, 544 S.W.2d at 371–72.  Consequently, we hold that the evidence is legally and factually sufficient to support the trial court's finding that termination of Appellant's parental rights

---

[4]Appellant argues that no service plan ever existed because it was not admitted into evidence.  We note, however, that Appellant failed to assert this objection at trial and that the judge took judicial notice of the case file, which included the service plan.

18

to M.C.T. is in M.C.T's best interest. *See* TEX. FAM. CODE ANN. § 161.001(2); *H.R.M.*, 209 S.W.3d at 108; *J.P.B.*, 180 S.W.3d at 573. Accordingly, we overrule Appellant's first point.

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

In her second point, Appellant argues that her trial attorney was ineffective because her counsel did not seek a ruling challenging the sufficiency of the evidence, request a record or a hearing on her motion for a jury trial, request findings of fact or conclusions of law, file a family code section 263.405(i) statement of points, and object to objectionable questions posed by TDFPS.

There is a right to effective assistance of counsel in termination cases. *In re M.S.*, 115 S.W.3d 534, 544 (Tex. 2003). We review ineffective assistance claims under the *Strickland* standard. *Id.* at 549. To establish ineffective assistance of counsel, appellant must show by a preponderance of the evidence that her counsel's representation fell below the standard of prevailing professional norms and that there is a reasonable probability that, but for counsel's deficiency, the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005); *Mallett v.*

19

*State*, 65 S.W.3d 59, 62-63 (Tex. Crim. App. 2001); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999).

In evaluating the effectiveness of counsel under the first prong, we look to the totality of the representation and the particular circumstances of each case. *Thompson*, 9 S.W.3d at 813. The issue is whether counsel's assistance was reasonable under all the circumstances and prevailing professional norms at the time of the alleged error. *See Strickland*, 466 U.S. at 688-89, 104 S. Ct. at 2065. Review of counsel's representation is highly deferential, and the reviewing court indulges a strong presumption that counsel's conduct fell within a wide range of reasonable representation. *Salinas*, 163 S.W.3d at 740; *Mallett*, 65 S.W.3d at 63. A reviewing court will rarely be in a position on direct appeal to fairly evaluate the merits of an ineffective assistance claim. *Thompson*, 9 S.W.3d at 813-14. "In the majority of cases, the record on direct appeal is undeveloped and cannot adequately reflect the motives behind trial counsel's actions." *Salinas*, 163 S.W.3d at 740 (quoting *Mallett*, 65 S.W.3d at 63).

The second prong of *Strickland* requires a showing that counsel's errors were so serious that they deprived the defendant of a fair trial, i.e., a trial whose result is reliable. *Strickland,* 466 U.S. at 687, 104 S. Ct. at 2064. In other words, appellant must show there is a reasonable probability that, but for

20

counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694, 104 S. Ct. at 2068.

Here, trial was to the bench, so Appellant did not have to file a motion to preserve her sufficiency arguments. *See* TEX. R. APP. P. 33.1(d) ("In a nonjury case, a complaint regarding the legal or factual insufficiency of the evidence . . . may be made for the first time on appeal in the complaining party's brief."). Appellant does not explain—and it is not apparent—how trial counsel's failure to request a hearing and make a record on her request for a jury trial was error or had any effect on her trial; thus, she fails to show that there was a reasonable probability that but for trial counsel's decision not to set a hearing on the motion, the result of the proceeding would have been different. *See Strickland,* 466 U.S. at 694, 104 S. Ct. at 2068.

In a trial to the court where no findings of fact or conclusions of law are filed, the trial court's judgment implies all findings of fact necessary to support it. *Pharo v. Chambers County*, 922 S.W.2d 945, 948 (Tex. 1996). However, where a reporter's record is filed, as in this case, these implied findings are not conclusive, and an appellant may challenge them by raising both legal and factual sufficiency of the evidence issues, which Appellant has done in this case. Consequently, Appellant has not shown that her counsel's representation fell below the standard of prevailing professional norms by not requesting the

21

trial court to enter findings of fact and conclusions of law. *See Strickland*, 466 U.S. at 687–88, 104 S. Ct. at 2064–65.

Trial counsel's failure to file a statement of points is moot in light of *D.W. See D.W.*, 2008 WL 467328, at *1. And the record is silent as to trial counsel's reason for not objecting to the multitude of questions cited in Appellant's brief and posed by opposing counsel. These alleged errors in trial counsel's performance are acts of omission, which are particularly ill-suited to review on direct appeal because the reason for counsel's omission is not reflected in the record. *See Thompson*, 9 S.W.3d at 814. Appellant has thus failed to rebut the strong presumption that her trial counsel's decision not to object to the complained-of portions of the testimony fell within the wide range of reasonable professional assistance. *See Strickland*, 466 U.S. at 687–88, 104 S. Ct. at 2064–65; *Thompson*, 9 S.W.3d at 814. We overrule Appellant's second point.

## V. DUE PROCESS

In her third point, Appellant argues that family code section 263.405(i)'s requirement that she file a specific statement of points within fifteen days after a final order is signed denies her due process. However, as TDFPS point out, if we determined that section 263.405(i) denied Appellant due process, her remedy would be to have her sufficiency and ineffective assistance of counsel

arguments addressed, which, having determined in *D.W.* that section 263.405(i) is void as a violation of the separation of powers provision of the Texas constitution, we have already done above. Thus, Appellant was not denied due process because we have addressed her arguments. We therefore overrule Appellant's third point.

## VI. CONCLUSION

Having overruled each of Appellant's points, we affirm the trial court's judgment terminating Appellant's parental rights to M.C.T.


DIXON W. HOLMAN
JUSTICE

PANEL F: HOLMAN, WALKER, and MCCOY, JJ.

DELIVERED: March 6, 2008

23