

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 2-08-250-CV

IN THE INTEREST OF A.R., R.T.R.,
AND L.R.M., CHILDREN

------------

FROM THE 393RD DISTRICT COURT OF DENTON COUNTY

------------

## MEMORANDUM OPINION[1]

------------

This is an appeal from an order terminating appellant's parental rights to her three children. In four issues, appellant challenges the legal and factual sufficiency of the evidence to support each of the four grounds upon which appellee, the Texas Department of Family and Protective Services, sought termination. We affirm.

---

[1] *See* Tex. R. App. P. 47.4.

**Background Facts**

The Department removed appellant's three children from her care after she was arrested for possession of marijuana found during a traffic stop. One of her children, R.T.R., was in the car with her at the time,[2] and appellant said she was on her way to pick up A.R. The officer who stopped appellant testified that he smelled a "fresh" and "strong" odor of burnt marijuana as he approached the driver's side window. He searched appellant's purse and found a small baggie of marijuana, empty baggies, and a pipe with methamphetamine residue inside; he also found baggies and scales in the car.[3] Appellant was charged with and convicted of possession of less than two ounces of marijuana.

The Department filed a petition to terminate appellant's rights to all three children, alleging that appellant

> knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endanger the physical or emotional well-being of the children;

---

[2] The officer who arrested appellant testified that R.T.R. appeared fine and was not upset.

[3] Appellant also said there was a half-smoked joint in the car, which she willingly gave to the officer. But she said she had not been smoking it. According to appellant, the pipe, scales, and baggies were in the console of her car and belonged to a drug dealer friend of hers, who had been in the car.

engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangers the physical or emotional well-being of the children;

. . . .

constructively abandoned the children who have been in the permanent or temporary managing conservatorship of the Department or an authorized agency for not less than six months and: (a) the Department or authorized agency has made reasonable efforts to return the children to the mother; (b) the mother has not regularly visited or maintained significant contact with the children; and (c) the mother has demonstrated an inability to provide the children with a safe environment; [and]

failed to comply with the provisions of a court order that specifically established the actions necessary for the mother to obtain the return of the children who have been in the permanent or temporary managing conservatorship of the Department for not less than nine months as a result of the children's removal from the parent under Chapter 262 for the abuse or neglect of the children.

*See* Tex. Fam. Code Ann. § 161.001(1)(D), (E), (N), (O) (Vernon Supp. 2008).

A jury found that all four of these grounds for termination had been met and that termination was in the children's best interest. Accordingly, the trial court signed an order terminating appellant's parental rights to all three children and naming the Department permanent managing conservator. Appellant timely perfected this appeal.

## Issues on Appeal

Appellant challenges the legal and factual sufficiency of the evidence to support all four grounds for termination found by the jury. She does not challenge the best interest finding.

## Standard of Review

A parent's rights to "the companionship, care, custody, and management" of his or her children are constitutional interests "far more precious than any property right." *Santosky v. Kramer*, 455 U.S. 745, 758–59, 102 S. Ct. 1388, 1397 (1982); *In re M.S.*, 115 S.W.3d 534, 547 (Tex. 2003). "While parental rights are of constitutional magnitude, they are not absolute. Just as it is imperative for courts to recognize the constitutional underpinnings of the parent-child relationship, it is also essential that emotional and physical interests of the child not be sacrificed merely to preserve that right." *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002). In a termination case, the State seeks not just to limit parental rights but to erase them permanently — to divest the parent and child of all legal rights, privileges, duties, and powers normally existing between them, except for the child's right to inherit. Tex. Fam. Code Ann. § 161.206(b) (Vernon Supp. 2008); *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). We strictly scrutinize termination proceedings and strictly construe involuntary termination statutes in favor of the parent. *Holick*,

4

685 S.W.2d at 20–21; *In re M.C.T.*, 250 S.W.3d 161, 167 (Tex. App.—Fort Worth 2008, no pet.).

In proceedings to terminate the parent-child relationship brought under section 161.001 of the family code, the petitioner must establish one ground listed under subdivision (1) of the statute and must also prove that termination is in the best interest of the child. Tex. Fam. Code Ann. § 161.001; *In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005). Both elements must be established; termination may not be based solely on the best interest of the child as determined by the trier of fact. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987).

Termination decisions must be supported by clear and convincing evidence. Tex. Fam. Code Ann. §§ 161.001, 161.206(a). Evidence is clear and convincing if it "will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* § 101.007 (Vernon 2002). Due process demands this heightened standard because termination results in permanent, irrevocable changes for the parent and child. *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002); *see In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007) (contrasting standards for termination and modification).

5

In reviewing the evidence for legal sufficiency in parental termination cases, we must determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction that the grounds for termination were proven. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). We must review all the evidence in the light most favorable to the finding and judgment. *Id.* This means that we must assume that the factfinder resolved any disputed facts in favor of its finding if a reasonable factfinder could have done so. *Id.* We must also disregard all evidence that a reasonable factfinder could have disbelieved. *Id.* We must consider, however, undisputed evidence even if it is contrary to the finding. *Id.* That is, we must consider evidence favorable to termination if a reasonable factfinder could, and disregard contrary evidence unless a reasonable factfinder could not. *Id.*

We must therefore consider all of the evidence, not just that which favors the verdict. *Id.* But we cannot weigh witness credibility issues that depend on the appearance and demeanor of the witnesses, for that is the factfinder's province. *Id.* at 573, 574. And even when credibility issues appear in the appellate record, we must defer to the factfinder's determinations as long as they are not unreasonable. *Id.* at 573.

In reviewing the evidence for factual sufficiency, we must give due deference to the factfinder's findings and not supplant the verdict with our

6

own. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006).  We must determine whether, on the entire record, a factfinder could reasonably form a firm conviction or belief that the parent violated subsections D, E, N, or O of section 161.001(1).  *In re C.H.*, 89 S.W.3d at 28.  If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction in the truth of its finding, then the evidence is factually insufficient.  *H.R.M.*, 209 S.W.3d at 108.

**Sufficiency of Evidence to Support Termination Under Section 161.001(1)(E)**

Appellant contends that the evidence is insufficient to support termination under subsections D and E because the Department failed to show a nexus between the drug use and any negative effect on appellant's children.  Specifically, appellant says that because there is no evidence she ever used drugs in front of her children, there is no evidence to support D and E as grounds.  We will address the sufficiency of the evidence under subsection E first.

When reviewing sufficiency under section 161.001(1)(E), we must determine whether sufficient evidence exists that the endangerment of the child's well-being was the direct result of the parent's conduct, including acts, omissions, or failures to act.  *In re M.N.G.*, 147 S.W.3d 521, 536 (Tex.

7

App.—Fort Worth 2004, pet. denied) (op. on reh'g). The term "endanger" as used in section 161.001(1)(E) means to expose to loss or danger, or to jeopardize. *Boyd*, 727 S.W.2d at 533; *M.N.G.*, 147 S.W.3d at 536. Termination under subsection E must be based on more than a single act or omission; a voluntary, deliberate, and conscious course of conduct by the parent is required. *In re M.R.*, 243 S.W.3d 807, 819 (Tex. App.—Fort Worth 2007, no pet.); *M.N.G.*, 147 S.W.3d at 536. But it is not necessary that the conduct be directed at the child or that the child actually suffer injury. *Boyd*, 727 S.W.2d at 533; *M.N.G.*, 147 S.W.3d at 536. The specific danger to the child's well-being may be inferred from the parent's conduct alone. *Boyd*, 727 S.W.2d at 533; *M.N.G.*, 147 S.W.3d at 536.

As a general rule, conduct that subjects a child to a life of uncertainty and instability endangers the physical and emotional well-being of a child. *M.N.G.*, 147 S.W.3d at 536; *In re R.W.*, 129 S.W.3d 732, 739 (Tex. App.—Fort Worth 2004, pet. denied). Drug use and its effect on a parent's life and her ability to parent may establish an endangering course of conduct. *R.W.*, 129 S.W.3d at 739.

Appellant admitted that she had been using drugs off and on since she was twenty. She stopped using while pregnant with A.R. and R.T.R., but she started again after R.T.R. was born. She stopped again while pregnant with

8

L.R.M., but she started using again after his birth. Her fourth child—who was born after A.R., R.T.R., and L.R.M. were removed from appellant—tested positive for methamphetamine at birth.[4]

Appellant admitted to driving her children to school while "up" on methamphetamine, and she agreed that this conduct was dangerous. She explained that "up" did not mean that she had just used but that she had not yet gone to sleep after using; she said she typically stayed awake for two days after using methamphetamine. She also admitted to "sometimes" being around her children after using. But appellant additionally testified that she did not use drugs in front of her children; appellant and her children lived with her parents, so she would leave the children with her parents or her brother[5] while she went to do drugs.[6] Sometimes, L.R.M. would stay with his paternal grandparents, and at other times, appellant left the children with a paternal uncle and his family. Further, appellant admitted to selling drugs; she acknowledged that such an activity was potentially dangerous to her children.

---

[4] This baby was adopted shortly after her birth. She is not involved in this appeal, nor was she involved in the underlying termination trial.

[5] Appellant's brother has also been arrested for methamphetamine possession.

[6] Appellant said she did drugs between one to two times per week.

The jury could also have reasonably inferred that appellant had very recently smoked, or was actively smoking, marijuana while driving with R.T.R. in the vehicle on the day the police stopped her. Additionally, the officer who stopped appellant testified that when he saw her, he was in the parking lot of a known "drug house" as a result of a prior call. He stopped appellant because he saw her pull into the parking lot, stop, back out, and turn back the way she had been going. He testified that he and another officer were visible to someone pulling into the parking lot. Thus, the jury could also have reasonably inferred that appellant was going to the drug house with R.T.R. in the car and that she changed her mind when she saw the officers.[7]

Appellant failed to appear for numerous scheduled drug tests that the Department requested she take. She blamed her failure to appear for some of the tests on a lack of transportation and at least one on the theft of her purse and enclosed identification.

At the time of trial, A.R. and R.T.R.'s father was incarcerated. CPS had twice investigated allegations that he had sexually abused both of his children.

---

[7] Appellant testified that the road was blocked, so she pulled into the parking lot to turn around and go another way. The officer who stopped and arrested appellant also testified that after her arrest, he saw appellant four or five times at drug houses in the city, but appellant testified that she was there because she had agreed to become an informant.

Appellant has not divorced him,[8] but she has had children with two other men, and she was living with another man at the time of trial, her third boyfriend since the removal. Both L.R.M.'s father and appellant's boyfriend at the time of trial have criminal records. The more recent boyfriend's record includes a conviction for enticing a child. Thus, the evidence shows that appellant has a history of unstable relationships with men.

Appellant was unemployed throughout most of this case; she relied on her father and grandmother to support her. At the time of trial, she was living with her new boyfriend and managing a restaurant they had opened together, but she testified that she was not yet making any money.

The record shows not only repeated and continuing drug use by appellant, but also other conduct that would contribute to an unstable and potentially dangerous lifestyle for her children. Accordingly, we conclude and hold, based on the appropriate standards of review, that the evidence is legally and factually sufficient to support termination under subsection E. *See, e.g., In re T.N.S.*, 230 S.W.3d 434, 438–39 (Tex. App.—San Antonio 2007, no pet.); *In re K.M.B.*, 91 S.W.3d 18, 25 (Tex. App.—Fort Worth 2002, no pet.) (noting that

---

[8] Appellant testified that she could not afford a divorce.

11

drug use need not occur in child's presence to be considered endangering behavior).  We overrule appellant's second issue.

Because a petitioner need establish only one of the acts or omissions enumerated under subdivision (1) of section 161.001, we need not address appellant's other issues regarding whether the evidence is legally and factually sufficient to support the jury's findings under subsections (D), (N), and (O).  *See* Tex. Fam. Code Ann. § 161.001(1)(D); Tex. R. App. P. 47.1; *In re S.B.*, 207 S.W.3d 877, 886 (Tex. App.—Fort Worth 2006, no pet.).

### Conclusion

Having overruled appellant's second and dispositive issue, we affirm the trial court's judgment.

TERRIE LIVINGSTON
JUSTICE

PANEL:  LIVINGSTON, DAUPHINOT, and GARDNER, JJ.

DELIVERED:  January 8, 2009