COURT
OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

                                                              NO. 2-09-460-CV

 

 

IN THE INTEREST OF D.A., A CHILD

 

 

                                                       ------------

 

              FROM
THE 323RD DISTRICT COURT OF TARRANT COUNTY

 

                                                       ------------

 

                                      MEMORANDUM OPINION[1]

 

                                                       ------------

I.  Introduction

Appellant
Terrance D. appeals the trial court=s order
terminating his parental rights to his daughter, D.A.[2]  In three issues, Terrance argues that section
161.002(b)(3) of the Texas Family Code violates his rights under the United
States and Texas constitutions and that the evidence is legally and factually
insufficient to show that he constructively abandoned D.A.  We will affirm.

II.  Factual Background

Terrance
is D.A.=s alleged
biological father.  Lisza A. is D.A.=s
mother.  Lisza is also the mother of
A.D.A., A.D.A., and R.J.A.  Terrance is
not the father of the other children.

Lisza was
married to Nathaniel J. in January 2008. 
Later that same month, Nathaniel went to jail; he was released in October
2008.  Lisza got pregnant with D.A. while
Nathaniel was incarcerated.

D.A. was
born on January 30, 2009.  On February 1,
2009, Latandra Hampton, a Child Protective Services (ACPS@)
investigator, received a referral for D.A. and Lisza=s other
children because both D.A. and Lisza tested positive for cocaine when D.A. was
born.  CPS then removed all of the
children from Lisza=s home and placed them in foster
care.

The Texas
Department of Family and Protective Services (Athe
Department@) then filed its petition for
protection of children, for conservatorship, and for termination in suit
affecting the parent-child relationship. 
In November 2009, after being arrested for robbery, Lisza signed an
Affidavit of Relinquishment of Parental Rights for all of her children,
including D.A.  Terrance never filed any
document in this matter nor did he personally appear.  The trial court, however, appointed an
attorney ad litem to represent Terrance.

On
November 24, 2009, the trial court signed an order terminating the parental
rights of Terrance and Lisza as to D.A. 
The trial court found by clear and convincing evidence that Terrance did
not register with the paternity registry and that after due diligence, his
whereabouts could not be located by the Department.  The trial court found that Terrance
constructively abandoned D.A. and that it was in D.A.=s best
interest to terminate Terrance=s
parental rights.  See Tex. Fam.
Code Ann. ' 161.001(1)(N) (Vernon Supp.
2010).  This appeal followed.

III.  Burden of Proof and Standard of Review

A parent=s rights to
Athe
companionship, care, custody, and management@ of his
or her children are constitutional interests Afar more
precious than any property right.@ Santosky
v. Kramer, 455 U.S. 745, 758B59, 102
S. Ct. 1388, 1397, 71 L. Ed.2d 599 (1982); In re M.S., 115 S.W.3d 534,
547 (Tex. 2003).  AWhile
parental rights are of constitutional magnitude, they are not absolute.  Just as it is imperative for courts to
recognize the constitutional underpinnings of the parent‑child
relationship, it is also essential that emotional and physical interests of the
child not be sacrificed merely to preserve that right.@  In re C.H., 89 S.W.3d 17, 26 (Tex.
2002). In a termination case, the State seeks not just to limit parental rights
but to erase them permanentlyCto divest
the parent and child of all legal rights, privileges, duties, and powers
normally existing between them, except for the child's right to inherit. Tex.
Fam. Code Ann. ' 161.206(b) (Vernon 2008); Holick
v. Smith, 685 S.W.2d 18, 20 (Tex. 1985). 
We strictly scrutinize termination proceedings and strictly construe
involuntary termination statutes in favor of the parent.  Holick, 685 S.W.2d at 20B21; In
re M.C.T., 250 S.W.3d 161, 167 (Tex. App.CFort
Worth 2008, no pet.).

In
proceedings to terminate the parent‑child relationship brought under
section 161.001 of the family code, the petitioner must establish one ground
listed under subdivision (1) of the statute and must also prove that
termination is in the best interest of the child.  Tex. Fam. Code Ann. ' 161.001;
In re J.L., 163 S.W.3d 79, 84 (Tex. 2005).  Both elements must be established;
termination may not be based solely on the best interest of the child as
determined by the trier of fact.  Tex.
Dep't of Human Servs. v. Boyd, 727 S.W.2d 531, 533 (Tex. 1987).

Termination
decisions must be supported by clear and convincing evidence. Tex. Fam. Code
Ann. '' 161.001,
161.206(a).  Evidence is clear and
convincing if it Awill produce in the mind of the
trier of fact a firm belief or conviction as to the truth of the allegations
sought to be established.@ 
Id. ' 101.007 (Vernon 2008).  Due process demands this heightened standard
because termination results in permanent, irrevocable changes for the parent
and child.  In re J.F.C., 96
S.W.3d 256, 263 (Tex. 2002); see In re J.A.J., 243 S.W.3d 611, 616 (Tex.
2007) (contrasting standards for termination and modification).

In
reviewing the evidence for legal sufficiency in parental termination cases, we
must determine whether the evidence is such that a factfinder could reasonably
form a firm belief or conviction that the grounds for termination were
proven.  In re J.P.B., 180 S.W.3d
570, 573 (Tex. 2005).  We must review all
the evidence in the light most favorable to the finding and judgment.  Id. 
This means that we must assume that the factfinder resolved any disputed
facts in favor of its finding if a reasonable factfinder could have done
so.  Id.  We must also disregard all evidence that a
reasonable factfinder could have disbelieved. 
Id.  We must consider,
however, undisputed evidence even if it is contrary to the finding.  Id. 
That is, we must consider evidence favorable to termination if a
reasonable factfinder could and disregard contrary evidence unless a reasonable
factfinder could not.  Id.

We must
therefore consider all of the evidence, not just that which favors the
verdict.  Id.  But we cannot weigh witness credibility
issues that depend on the appearance and demeanor of the witnesses, for that is
the factfinder=s province.  Id. at 573, 574. And even when
credibility issues appear in the appellate record, we must defer to the
factfinder=s determinations as long as they
are not unreasonable.  Id. at 573.

In
reviewing the evidence for factual sufficiency, we must give due deference to
the factfinder=s findings and not supplant the
judgment with our own.  In re H.R.M.,
209 S.W.3d 105, 108 (Tex. 2006).  We must
determine whether, on the entire record, a factfinder could reasonably form a
firm conviction or belief that the parent violated the relevant conduct
provisions of section 161.001(1) and, if challenged, that the termination of
the parent‑child relationship would be in the best interest of the
child.  C.H., 89 S.W.3d at
28.  If, in light of the entire record,
the disputed evidence that a reasonable factfinder could not have credited in
favor of the finding is so significant that a factfinder could not reasonably
have formed a firm belief or conviction in the truth of its finding, then the
evidence is factually insufficient.  H.R.M.,
209 S.W.3d at 108.

IV. 
Evidentiary Sufficiency of
Constructive Abandonment Finding

In his
second and third issues, Terrance argues that the evidence is legally and
factually insufficient to prove that he constructively abandoned D.A.  Specifically, Terrance argues that the
evidence is legally and factually insufficient to show that the Department made
reasonable efforts to return D.A. to Terrance and that Terrance demonstrated an
inability to provide a safe environment for D.A.

The
elements of constructive abandonment are (1) a child has been in the
permanent or temporary managing conservatorship of the Department or an
authorized agency for not less than six months, (2) the Department or authorized
agency has made reasonable efforts to return the child to the parent,
(3) the parent has not regularly visited or maintained significant contact
with the child, and (4) the parent has demonstrated an inability to
provide the child with a safe environment. 
Tex. Fam. Code Ann. ' 161.001(1)(N);
In re M.R.J.M., 280 S.W.3d 494, 505B06 (Tex.
App.CFort
Worth 2009, no pet.) (op. on reh=g).  If there is no evidence of one or more of
these elements, then the finding of constructive abandonment must fail.  See M.R.J.M., 280 S.W.3d at 505.  Terrance challenges the sufficiency of the
evidence on only the second and fourth grounds.

A.      Reasonable Efforts to Return the Child to
the Parent

Returning
a child to a parent under section 161.001(1)(N) does not necessarily mean that
the child has to be physically delivered to the individual.  See In re D.S.A., 113 S.W.3d 567, 573
(Tex. App.CAmarillo 2003, no pet.).  A[R]easonable
efforts@ to
reunite parent and child can be satisfied through the preparation and
administration of a service plan.  See
id. at 572B73; In re K.M.B., 91
S.W.3d 18, 25 (Tex. App.CFort Worth 2002, no pet.).  Terrance argues that the Department did not
make reasonable efforts to return D.A. because the Department never developed a
service plan for him.

The
Fourteenth Court of Appeals addressed this issue in In re B.S.T., 977
S.W.2d 481 (Tex. App.CHouston [14th Dist.] 1998),
rev=d on other grounds by In re C.H., 89
S.W.3d 17, 26 (Tex. 2002).  In B.S.T.,
after the trial court terminated appellant=s
parental rights, appellant filed an appeal claiming that he was never given a
service plan and that no reasonable efforts were made to return the children to
him.  Id. at 486.  The court of appeals stated that

[o]ur review of the record reveals that [the mother] was provided with
a Family Service Plan, but there is no evidence appellant was provided a
separate plan by TDPRS.  The record
indicates [the mother] did not know appellant=s whereabouts at the time
the children were taken into custody.  A
diligent search was made to locate appellant. 
When he was located, and after his release from prison, he was advised
of visitation and did visit with his children twice, but he made no further
efforts to be involved.  Caseworkers
advised him he should sign an affidavit of paternity, but he never did so.  A caseworker for TDPRS testified that all
reasonable efforts were made to return the children to the parents.  We believe this evidence is sufficient to
support termination under subsection (N).

 

 








Id.

Here,
Hampton testified that after D.A. was removed from Lisza=s home,
she contacted Terrance by telephone.  She
stated that during the phone call, Terrance told her that he was not D.A.=s
father.  She testified that she told
Terrance to go to the courthouse to receive paperwork about the case.  During the conversation, Terrance did not ask
for DNA evidence regarding his paternity nor did he ask to see D.A.  Hampton stated that she did not have any
other contact with Terrance, that she did not attempt to contact him at his
home address, and that she did not send him any correspondence.

Additionally,
Oneeka Chilton, a CPS caseworker, testified that she developed a service plan
for Lisza and her husband Nathaniel.  She
further stated that it was her understanding that Terrance was the father of
D.A.  She testified, however, that Terrance
never visited with the children and that he never called her regarding
D.A.  Chilton said that she attempted to
call Terrance at his home but that the phone had been disconnected.  Further, Chilton testified that two service
attempts were made on Terrance at two different addresses but that CPS could
not serve him.  Chilton stated that
Terrance had not shown an ability to care for or support D.A.

Further,
Lisza testified that she last had contact with Terrance before she was
incarcerated but that she did not know what month that was.  She stated that she had Aheard of@ Terrance
quite a few times that year.  Lisza said
that her mother has had contact with Terrance while she has been
incarcerated.  She stated that she did
not know Terrance=s last address.

Lisza
testified that Terrance knew that she was pregnant with D.A.  She further stated that Terrance attempted to
care for her and D.A. while she was pregnant and after D.A. was born.  She stated that Terrance knew that D.A. had
been removed from her home by CPS. 
Although Terrance asked her for information on whom to contact to get
custody of D.A., she did not know if he ever followed through and contacted
CPS.  Additionally, Lisza testified that
Terrance did not make any attempts to visit D.A.  Lisza stated that Terrance was aware that he
could have been in court on the day of the trial and that she told Terrance how
to contact the CPS worker.

It is
apparent from the record that the Department made all reasonable efforts to
return D.A. to Terrance.  The Department
contacted Terrance, but Terrance did not take any action to visit or get
custody of D.A.  Furthermore, a diligent
search was made to locate Terrance.  
Terrance disconnected his phone, and neither Lisza nor the Department
knew how to reach him.  Additionally, the
Department attempted to serve Terrance at two different addresses.

We hold
that the evidence is legally and factually sufficient to prove that the
Department made reasonable efforts to return D.A. to Terrance.  See Tex. Fam. Code Ann. ' 161.001(1)(N)(i);
B.S.T., 977 S.W.2d at 486.

B.      Demonstrated Inability to Provide a Safe Environment
for the Child

Terrance
argues that the Department presented Ano
evidence concerning the environment that Appellant would provide for the child.@  However, the record does not contain any
indication that Terrance wanted D.A. to live with him; instead, Terrance=s acts
show the opposite.  The Department
contacted Terrance, but Terrance stated that he was not D.A.=s
father.  Additionally, Terrance never
visited with D.A. after she was born and before his parental rights were
terminated.  Although Terrance argues
that he was in contact with D.A.=s maternal
grandmother while D.A. was in a foster home, there is no evidence that Terrance
met with D.A., offered to pay for D.A.=s
necessities while she was in foster care, or contacted the Department to try to
get custody of D.A.

Accordingly,
the evidence establishes Terrance=s
inability to provide D.A. with any environment, much less a safe environment.  Thus, the evidence is legally and factually
sufficient as to the Asafe environment@ element
of constructive abandonment.  See
Tex. Fam. Code Ann. ' 161.001(1)(N)(iii); see
also In re T.M., No. 02-09-145-CV, 2009 WL 5184018, at *4B5 (Tex.
App.CFort
Worth Dec. 31, 2009, pet. denied) (mem. op.) (holding evidence legally and
factually sufficient to support inability to provide safe environment finding
when father failed to complete service plan, did not attempt to find a place
for children to live, and did not give foster mother money to care for
children).

Accordingly,
we hold that the evidence is legally and factually sufficient to support the
trial court's constructive abandonment finding.[3]
Thus, we overrule Terrance=s second
and third issues.  Additionally, having
overruled Terrance=s second and third issues, we
need not address his first issue.  See
Tex. R. App. P. 47.1.

V.  Conclusion

Having
overruled Terrance=s second and third issues, we
affirm the trial court=s order terminating the
parent-child relationship between Terrance and D.A.

 

 

 

BILL MEIER

JUSTICE

 

PANEL:  DAUPHINOT, GARDNER, and
MEIER, JJ.

 

DELIVERED:  September 16, 2010











[1]See Tex. R. App. P. 47.4.





[2]To protect the privacy of
the children involved, we identify them by initials only.  See Tex. R. App. P. 9.8(b); Tex. Fam.
Code Ann. ' 109.002(d) (Vernon
2008).





[3]Terrance does not
challenge the trial court=s best interest finding.