

IN THE
TENTH COURT OF APPEALS

No. 10-23-00413-CV

IN THE INTEREST OF
K.A.M.J., K.D.J., AND K.A.M.J., CHILDREN

From the 474th District Court
McLennan County, Texas
Trial Court No. 2022-2788-6

## MEMORANDUM OPINION

Appellant appeals the final order terminating her parental rights to her children, K.A.M.J., K.D.J., and K.A.M.J.[1]  In her sole issue on appeal, Appellant challenges the legal sufficiency of the evidence to support the best-interest finding.  We affirm the trial court's judgment.

### Background

When this case was initiated, Appellant had three children with S.J. – K.A.M.J., K.D.J., and K.A.M.J..[2]  The Department of Family and Protective Services ("the

---

[1] The trial court also terminated the parental rights of S.J., the children's father. He does not appeal.

Department") received a report that S.J. committed domestic violence against Appellant in the home while the children were present. The Department filed a petition seeking termination of Appellant and S.J.'s parental rights and conservatorship of the children. After a bench trial, an associate judge rendered a final order terminating both parents' rights to all three children, finding by clear and convincing evidence that Appellant met the predicate grounds under Texas Family Code Sections 161.001(b)(1)(D) and 161.001(b)(1)(E) and that termination was in the children's best interest. Appellant requested a de novo hearing solely on the issue of whether termination of Appellant's parental rights was in the best interest of the children. Appellant and a representative of the Department testified at the de novo hearing, and the transcripts from the original termination proceeding were admitted into evidence and considered by the trial court. The trial court confirmed the original findings of the associate judge and affirmed the order terminating Appellant's parental rights to the children. Appellant timely filed her notice of appeal.

## Sufficiency of the Evidence Supporting the Best Interest Finding

STANDARD OF REVIEW AND APPLICABLE LAW

In conducting a legal sufficiency review in a parental termination case:

[A] court should look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. To give appropriate

---

[2] While this case was pending, Appellant gave birth to a fourth child. That child was the subject of a separate termination suit.

deference to the factfinder's conclusions and the role of a court conducting a legal sufficiency review, looking at the evidence in the light most favorable to the judgment means that a reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so. A corollary to this requirement is that a court should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible.

*In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (per curiam) (quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)).

There is a strong presumption that a child's best interests are served by maintaining the parent-child relationship. *Jordan v. Dossey*, 325 S.W.3d 700, 729 (Tex. App.—Houston [1st Dist.] 2010, pet. denied). However, while parental rights are of constitutional magnitude, they are not absolute. *Id*. The non-exhaustive list of factors that have been consistently considered in determining the best interest of the child were set out in the Texas Supreme Court's opinion, *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). These factors are: (1) the child's wishes; (2) the child's emotional or physical needs now and in the future; (3) the emotional or physical danger to the child now and in the future; (4) the parenting abilities of the parties seeking custody; (5) programs available to help those parties; (6) plans for the child by the parties seeking custody; (7) the stability of the proposed placement; (8) the acts or omissions of the parent that indicate that the existing parent-child relationship is not proper; and (9) any excuses for the acts or omissions of the parent. *See Id.* The *Holley* factors focus on the best interest of the child, not the best interest of the parent. *In re S.L.*, 421 S.W.3d 34, 38 (Tex. App.—

Waco 2013, no pet.). There is no requirement that every factor must be proved as a condition precedent to parental termination, and the absence of evidence about some factors does not preclude a factfinder from reasonably forming a strong conviction that termination is in the children's best interest. *See In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002).

DISCUSSION

Evidence relating to the predicate grounds under Texas Family Code Section 161.001(b)(1) may be relevant to determining the best interest of the children. *See In re C.H.*, 89 S.W.3d at 27-28. In this case, the evidence that supports the trial court's findings on the predicate grounds is particularly relevant when considering the children's physical and emotional needs now and in the future and the physical and emotional danger to the children now and in the future. We note that Appellant does not challenge the sufficiency of the evidence supporting the trial court's findings under Texas Family Code Sections 161.001(b)(1)(D) (knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child) and 161.001(b)(1)(E) (engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child). *See* TEX. FAM. CODE ANN. §§ 161.001(b)(1)(D), (b)(1)(E).

The basis for removal in this case centered around the ongoing domestic violence in Appellant's relationship with the children's father, S.J. Abusive conduct by a person who lives in the child's home or with whom the child is compelled to associate on a

regular basis in the home is part of the "conditions and surroundings" of the child's home. *See Jordan v. Dossey*, 325 S.W.3d at 721. A child's exposure to violence in the home undermines the safety of the home environment and is relevant when considering the best interest of the child. *See Interest of O.J.P.*, No. 01-21-00163-CV, 2021 WL 4269175, at *17 (Tex. App.—Houston [1st Dist.] Sept. 21, 2021, no pet.) (mem. op). Further, a parent's violent behavior while a child is in the home places the child in severe emotional danger. *See In re S.B.*, 207 S.W.3d 877, 886–87 (Tex. App.—Fort Worth 2006, no pet.).

The Department documented domestic violence history between S.J. and Appellant that occurred in the home and in front of the children. Appellant admitted to three instances of S.J. committing domestic violence against her. The specific incident that initiated this case involved S.J. assaulting and physically injuring Appellant. According to the report, S.J. kicked in a locked door, threw Appellant on the bed, and punched her. S.J. took Appellant's phone and ran into the kitchen, prompting Appellant to get S.J.'s gun. Appellant took the gun into the kitchen, pointed it at the ground, and told S.J. to leave. While in the children's presence, S.J. grabbed Appellant's hair. Appellant ran outside with the gun, but S.J. followed her, continued to assault her in the street, and took the gun from her. The Department's affidavit states that S.J. pointed the gun at Appellant and threatened to kill her before running back into the house with the children and locking Appellant out of the home. Appellant ran to a neighbor's house and called 9-1-1. When S.J. was subsequently arrested, he threatened to kill Appellant and

the three children when he was released from jail by setting the house on fire with them inside of it. Two of the children – K.A.M.J. and K.D.J. – were able to recall and reenact portions of the altercation for law enforcement officers. The day after the altercation, the Department observed K.D.J. express anger toward his sister for taking away his toy by "hitting her with a closed fist and when she cried and ran away from him, he chased her, yanked her by the back of her shirt, and then began to hit her again until his grandmother quickly intervened."

Appellant argues that the trial court could not have reasonably found that termination was in the children's best interest because "the issues that led to [the Department's] involvement had been alleviated and are no longer an issue." Appellant points to her testimony at the de novo hearing that she began domestic violence education classes and domestic violence counseling at the Family Abuse Center after her parental rights to the children were terminated. However, the trial court could reasonably believe that Appellant's participation in domestic violence classes and counseling did not alleviate the domestic violence concerns in the home. In 2020, S.J. assaulted Appellant in the home and in front of the children, resulting in Appellant's hospitalization. Appellant completed domestic violence education courses through Family Based Safety Services offered by the Department. At the conclusion of that case, Appellant had reportedly learned how an unhealthy relationship and domestic violence in the household can cause an unsafe living environment for the children. In this case,

despite her prior domestic violence education, Appellant initially told the Department that she would allow S.J. to see the children at his discretion because he had never physically harmed the children. At the time of the final hearing, Appellant reiterated her hope that the children could have a relationship with S.J.

In support of her argument, Appellant also points to her testimony that she was no longer in a relationship with S.J. at the time of the final hearing. However, the trial court was free to disbelieve this testimony. Appellant claimed to have cut off all communication with S.J. when her previous case with the Department was closed in 2020. Appellant later allowed S.J. to move back into the home with the children. The Department noted that Appellant "cycled" throughout the pendency of this case between acknowledging that her relationship with S.J. was problematic and then denying that there were any problems or concerns. Notably, S.J. had little involvement in this case and did not complete any services related to domestic violence. Evidence was presented indicating that S.J. was simply waiting on Appellant to take the necessary steps to get their children returned to her custody so that he and Appellant could work out his involvement with the children between themselves. At the de novo hearing, the Department testified that Appellant still considered S.J.'s mother as part of her support system and expressed concern that S.J. somehow knew details of the pending case despite his lack of involvement. Considering this evidence, the trial court could have reasonably concluded that Appellant would continue to knowingly allow the children to remain in

a home environment that not only threatened their physical safety, but would also continue to endanger their emotional well-being.

A parent's failure to regularly visit her children after removal may support a finding that termination of the parent's rights is in the children's best interest. *See In re T.R.H.*, No. 01-16-00450-CV, 2016 WL 6873061, at *8 (Tex. App.—Houston [1st Dist.] Nov. 22, 2016, pet. denied) (mem. op.). This is because the failure to regularly visit one's child signals that the parent-child relationship is not an appropriate one and that the parent is unwilling or unable to meet her child's emotional and physical needs. *See In re R.S.*, No. 01-20-00126-CV, 2020 WL 4289978, at *9 (Tex. App.—Houston [1st Dist.] July 28, 2020, no pet.) (mem. op.). In this case, Appellant dealt with medical issues that kept her from exercising some of her visitation. However, even when Appellant was medically able, she exercised only a fraction of the available visitation with her children and missed some of her prearranged visits. On at least one occasion, Appellant promised the children she would return after work for another visit and then did not return as promised. Even when Appellant was physically present with the children, evidence suggests that she struggled to stay engaged with the children and to appropriately interact with them. The Department expressed concern with the quality of Appellant's participation in the visits, specifically stating that Appellant was "mostly unengaged, has a flat affect, and does not seem happy to see the children," that she "rarely plays with them or even talks with them during visits" and "seems disinterested with what the children are doing."

Further, permanence is of paramount importance in considering a child's present and future needs, and prompt and permanent placement of the child in a safe environment is presumed to be in the child's best interest. *See In re M.C.T.*, 250 S.W.3d 161, 170 (Tex. App.—Fort Worth 2008, no pet.); *See Interest of B.C.S.*, 479 S.W.3d 918, 927 (Tex. App.—El Paso 2015, no pet.). At the time of the final hearing, the children had been living in the caregiver's home for approximately one year, and the caregiver was willing to adopt them. When the children were placed in the caregiver's home, she addressed the children's physical needs, such as their severe dental decay, potty training, and delinquent immunizations. She also addressed their emotional needs, as notable improvements were reported in the children's behavior in the caregiver's home and through ongoing therapy. The Department also testified that the children had positive responses to the structure they were receiving in the caregiver's home.

Considering the evidence in the light most favorable to the trial court's finding, we hold that a reasonable factfinder could have formed a firm belief or conviction that termination of Appellant's parental rights was in the best interest of the children. Accordingly, we affirm the judgment of the trial court.

**Conclusion**

Having overruled Appellant's sole issue on appeal, we affirm the judgment of the trial court.

STEVE SMITH
Justice

Before Chief Justice Gray,
   Justice Johnson, and
   Justice Smith
Affirmed
Opinion delivered and filed March 21, 2024
[CV06]

