COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.  2-08-215-CV

 

 

IN THE
INTEREST OF J.A.W., J.A.W., 

J.E.W., AND J.A.W., CHILDREN

 

 

                                              ------------

 

           FROM THE 323RD
DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

Appellant Jason W. appeals the order terminating
the parent-child relationship between him and his four children.  We affirm.

                                            Background








The Texas Department of Family and Protective
Services (Athe Department@) filed
a petition to terminate the parent-child relationship between Starla H. and six
of her childrenCAlice, Betty, Charles, David,
Eric, and Flora (all pseudonyms) and between the children and their respective
fathers.  Jason is the father of Charles,
David, Eric, and Flora and was married to Starla at the time of trial.  This appeal concerns only the relationship
between Jason and his four children.








Susan Rial, a Department investigator, testified
that she received a referral in March 2004 concerning Starla and Jason when
Starla accused Jason of sexually abusing her daughters, having guns in the
family home, and dealing and using drugs. 
Jason accused Starla of having a crack cocaine problem and told Rial
that Starla would be away from home for days at a time on crack binges.  Rial asked Jason to submit to a drug test; he
refused to submit to the test immediately as Rial requested, but when he did
submit to the test, it was negative. 
Starla=s seventh childCGertrude
(a pseudonym)Ctold Rial that Jason had shown
her his penis and asked her to scratch it, but she refused.  Alice told Rial that she was aware of her
mother=s drug
use and described an occasion when Starla grabbed the steering wheel of a
moving car and tried to run the car off the road while stating that she did not
want to live anymore.  The Department
offered services to Starla and Jason so that the three boys could remain in the
home.  Later, Starla told Rial that her
original allegations against Jason were false. 
Eventually, the Department agreed to allow the girls to live with a
relative in Louisiana while the boys remained with Starla and Jason.  Jason told Rial that he would not allow
Starla in the family home if she used drugs again.  Rial said that the disposition of the sexual
abuse allegation against Jason was A[r]eason
to [b]elieve.@

Rial testified that she received another referral
in July 2004 concerning, among other things, allegations that Jason had Apulled a
shotgun@ on
Starla.  Law enforcement officers also
reported that Starla was using drugs and that Athe
house was a mess, dirty diapers lying around with flies.@  Rial discovered that Jason, Starla, and the
boys were living with Starla=s
mother, Peggy; Alice was living there, too, not in Louisiana as Jason and
Starla had agreed.  Starla told Rial that
she was just coming off another crack binge and that she wanted to get into a
rehabilitation program.  Starla also told
Rial that the family car had recently been stolen and that it had $5,000 cash
in it at the time; this concerned Rial because Starla had previously told her
that Jason dealt drugs.  Jason refused to
take a drug test.  Rial told Jason and
Starla that she was reopening their case for safety services and that Athis
time it would have to happen.@  Rial determined that Jason, Starla, and the
children could stay with Peggy for the time being.








Rial lost contact with Jason and Starla when they
left Peggy=s apartment with the boys (Alice
continued to live with Peggy).  In
September, Rial learned that Jason had been arrested for charges stemming from
the shotgun incident, and Starla told her that she was pressing charges for Abeating
her and pulling a shotgun on her.@  Starla agreed to go into drug treatment and
leave the children with Peggy.  Jason
told Rial that he did not think the children would be safe with Starla.  Rial eventually closed the case with the
disposition A[r]eason to [b]elieve for
neglectful supervision@ and Aphysical
neglect@ against
both Jason and Starla.  Rial also
testified that Jason Atook action such as calling the
police or making reports because he felt that his children would not be safe
with Starla.@

Kamesha Gray, another Department investigator,
testified that she received a neglectful-supervision referral concerning the
family in March 2006.  She learned that
Jason was in prison and that the children were home alone for up to a week
without Starla.  Gray interviewed
Gertrude, who said that the children had been home alone for a week after
Starla said she was Agoing to pick up some chicken
and . . . never returned.@ 
Gertrude said that Alice was taking care of the other children.  Gertrude also said that Starla was pregnant
and using drugs.  Betty and Charles essentially
told Gray the same thing.  Gray also
interviewed Alice, whom she described as Avery,
very upset@ because she was Ahaving
to basically support children at [age] 13 and go to school.@  The Department arranged for the children to
stay with family friends.








Gray located Starla, who admitted to having left
the children alone, agreed to place the children with the family friends, and
said she would Ado anything that it took@ to get
the kids back.  Starla entered a
twenty-eight-day in-patient rehabilitation program.

Gray transferred the case to Department
caseworker Lamorra Cornelius.  Cornelius
testified that Starla was discharged from the rehabilitation program after
about two weeks because of her advanced pregnancy.  After her discharge, Starla continued to
attend outpatient rehabilitation sessions and parenting classes.  Cornelieus was not able to verify that Starla
completed the classes.  Jason remained
incarcerated.  Meanwhile, the children=s
temporary placement with family friends broke down, so the Department allowed
them to return to Starla.  After the
children returned to her, Starla stopped attending rehabilitation sessions and
parenting classes and failed to submit to drug testing when so requested.  Flora was born about thirty days after the
Department returned the other children to Starla.  Although Cornelius was concerned that the
children were not safe with Starla, she had no choice but to close the case,
which she did in October 2006.








Another Department investigator, Florence
Olugbuyi, received a referral involving Starla and the children in December
2006 after police found the children at home alone.  Alice told her that Starla had been gone for several
days and was using drugs again.  Jason
was still incarcerated, and Olugbuyi learned that Starla was in jail, too.  The Department placed the children in foster
care.  Olugbuyi interviewed Starla in
jail, and Starla told her that Jason was incarcerated because he had been in a
car with someone who had drugs on him. 
Starla told Olugbuyi that she did not intend to be involved with Jason
again.  Starla was allowed visitation
with the children upon her release from jail, and Olugbuyi said that the visits
were appropriate and that the children appeared to be bonded with Starla.  Olugbuyi saw no indication that Jason ever
tried to contact the children.

Whitney Lagadinos, another Department caseworker,
testified that Charles told her that Jason had tried to cut Starla with a knife
and that Charles and his siblings had witnessed the altercation.  She also testified that Jason had convictions
for possession of controlled substances and for possession of a short-barreled
firearm, a deferred adjudication for assault/bodily injury to a family member,
and a judgment nisi for evading arrest.








Jeremy Pike, a Department caseworker, testified
that Starla told him that Jason had tried to kill her in August 2007.  He said that Starla relapsed into cocaine use
in August and November 2007.  Pike testified
that Jason had not participated in any service plans.  At the time of trial, Charles was living at
the Nacogdoches Boys= Ranch, where he continued Ato
improve and improve.@ 
David and Eric were living with a foster family and attending a Head
Start program.  Pike said that the
children were very bonded to one another, and the Department=s plan
was for one family to adopt all four of Jason=s
children.

Arlington police officer Barbara Kelly testified
that she responded to a domestic violence call in October 2007 and found Jason
holding a butcher knife to a pregnant woman=s
throat.  Apparently, Starla was also
presentCshe was
listed on the police report as a victimCbut she
was not the woman Jason threatened with the knife.

Jason testified that he was incarcerated at the
time of trial and had been since October 2007 (he also described an earlier
period of incarceration, but the testimony is confusing).  He said, A[I]f you
want me to sign a paper right now saying to trade my life for [the children=s]
freedom to whoever I choose, I will sign that paper, but I=m never
going to relinquish my rights, because I love my children.@  But he was unable to provide an answer when
asked where the children would go if the trial court relinquished them to his
custody other than saying, AI=m sure I
have family members that would at least help me get on my feet and they wouldn=t leave
my children without food.@








The trial court found that Jason had knowingly
placed or knowingly allowed the children to remain in conditions or
surroundings that endangered the physical or emotional well-being of the
children, engaged in conduct or knowingly placed the children with persons who
engaged in conduct that endangered the physical or emotional well-being of the
children, and constructively abandoned the children.  See Tex. Fam. Code Ann. ' 161.001(1)(D),
(E), (N) (Vernon Supp. 2008).  The trial
court further found that termination was in the children=s best
interest, and it terminated the parent-child relationship between Jason and his
children and appointed the Department to serve as their permanent managing
conservator.

                                             Discussion

In four issues, Jason argues that the evidence is
factually insufficient to support the grounds for termination and the trial
court=s best-interest
finding.








A parent=s rights
to Athe
companionship, care, custody, and management@ of his
or her children are constitutional interests Afar more
precious than any property right.@  Santosky v. Kramer, 455 U.S. 745, 758B59, 102
S. Ct. 1388, 1397 (1982); In re M.S., 115 S.W.3d 534, 547 (Tex.
2003).  In a termination case, the State
seeks not just to limit parental rights but to erase them permanentlyCto
divest the parent and child of all legal rights, privileges, duties, and powers
normally existing between them, except for the child=s right
to inherit.  Tex. Fam. Code Ann. '
161.206(b) (Vernon 2008); Holick v. Smith, 685 S.W.2d 18, 20 (Tex.
1985).  We strictly scrutinize
termination proceedings and strictly construe involuntary termination statutes
in favor of the parent.  Holick,
685 S.W.2d at 20B21; In re M.C.T., 250
S.W.3d 161, 167 (Tex. App.CFort
Worth 2008, no pet.).

In proceedings to terminate the parent‑child
relationship brought under section 161.001 of the family code, the petitioner
must establish one ground listed under subdivision (1) of the statute and must
also prove that termination is in the best interest of the child.  Tex. Fam. Code Ann. '
161.001; In re J.L., 163 S.W.3d 79, 84 (Tex. 2005).  Both elements must be established;
termination may not be based solely on the best interest of the child as
determined by the trier of fact.  Tex.
Dep=t of Human Servs. v. Boyd, 727
S.W.2d 531, 533 (Tex. 1987).

Termination decisions must be supported by clear
and convincing evidence.  Tex. Fam. Code
Ann. ''
161.001, 161.206(a).  Evidence is clear
and convincing if it Awill produce in the mind of the
trier of fact a firm belief or conviction as to the truth of the allegations
sought to be established.@ Id. ' 101.007
(Vernon 2002).  Due process demands this
heightened standard because termination results in permanent, irrevocable
changes for the parent and child.  In
re J.F.C., 96 S.W.3d 256, 263 (Tex. 2002); see In re J.A.J.,
243 S.W.3d 611, 616 (Tex. 2007) (contrasting standards for termination and
modification).








When reviewing the evidence for factual
sufficiency, we must give due deference to the factfinder=s
findings and not supplant the judgment with our own.  In re H.R.M., 209 S.W.3d 105, 108
(Tex. 2006).  We must determine whether,
on the entire record, a factfinder could reasonably form a firm conviction or
belief that the parent violated the relevant conduct provisions of section
161.001(1) and that the termination of the parent-child relationship would be
in the best interest of the child.  In
re C.H., 89 S.W.3d 17, 28 (Tex. 2002). 
If, in light of the entire record, the disputed evidence that a
reasonable factfinder could not have credited in favor of the finding is so
significant that a factfinder could not reasonably have formed a firm belief or
conviction in the truth of its finding, then the evidence is factually
insufficient.  H.R.M., 209 S.W.3d
at 108.

1.     Endangering Conduct

In his second issue, Jason argues that the
evidence is factually insufficient to support the trial court=s
endangering-conduct finding.  He argues
that the evidence proves he was a good father when he was not in jail and that
when he was in jail, he had no control over the conditions and conduct to which
the children were exposed.








The record shows that even when Jason was not
incarcerated, he failed to protect his children from Starla=s
days-long cocaine binges and absences from the family home.  Rial conceded that Jason would call the
police when he thought it was unsafe to leave the children with Starla, but the
record also shows that he did nothing to remove the children from that environment.  To the contrary: he made the environment
worse by dealing drugs out of the home; the children told Department employees
that white powder and scales were in plain view in the family home.  Further, Jason refused the Department=s
request for one drug test and delayed another, from which a factfinder could
reasonably infer that he was taking drugs, too. 
See In re W.E.C., 110 S.W.3d 231, 239 (Tex. App.CFort
Worth 2003, no pet.); In re D.M., 58 S.W.3d 801, 813 (Tex. App.CFort
Worth 2001, no pet.).  A parent=s
failure to remain drug‑free while under the Department=s
supervision will support a finding of endangering conduct under subsection (E)
even if there is no direct evidence that the parent=s drug
use actually injured the child.  Vasquez
v. Tex. Dep=t of Protective & Regulatory
Servs., 190 S.W.3d 189, 196 (Tex. App.CHouston
[1st Dist.] 2005, pet. denied) (holding mother=s drug
use while failing to protect children constituted endangerment without need to
show that she directed her conduct at child or that child actually suffered
injury).  Jason also behaved violently in
the family home; on one occasion, he threatened Starla with a shotgun, and on
another occasion, he attempted to cut her with a knife in front of the
children.








Moreover, although Jason argues that his
incarceration weighs against a finding of endangerment, we have previously held
that imprisonment is a fact properly considered on the issue of endangerment
and can support a finding of endangerment. 
In re D.M., 58 S.W.3d at 812 (citing Boyd, 727 S.W.2d at
533B34).  The State need not show that the
incarceration itself was a result of a course of conduct endangering the child;
it need only show that incarceration was part of a course of conduct
endangering the child.  Id.  AThus, if
the evidence, including imprisonment, proves a course of conduct that has the
effect of endangering the child, the requirement of subsection E is met.@  Id. (citing Boyd, 727 S.W.2d at
533B34).








It appears from the record that Jason was
incarcerated during most of the time that the Department was involved with his
family.  At the time of trial in May
2008, Jason had been jailed since October 2007, and he had also been in jail
from March 2007 until June 2007.  Before
that, he had also been in jail for eleven months for possession of a controlled
substance.  He may not have been able to
influence the children=s environment when he was in
jail, but the fact that he engaged in behavior that resulted in incarceration
and left his children to cope with their drug-addicted mother on multiple
occasions is some evidence of endangering conduct.  The conduct for which Jason was jailed at the
time of trial is particularly significant, namely, assaulting a pregnant woman
with a butcher knife.

Based on the entire record, we hold that a
factfinder could reasonably form a firm conviction or belief that Jason engaged
in conduct or knowingly placed the children with persons who engaged in conduct
that endangered the physical or emotional well-being of the children.  See C.H., 89 S.W.3d at 28.  Therefore, the evidence is factually
sufficient to support the trial court=s
findings under section 161.001(1)(E).  We
overrule Jason=s second issue.  Because a finding of a single violation of
161.001(1) will support termination when coupled with a finding that
termination is in the children=s best
interest, we need not address Jason=s first
and third issues, in which he argues that the evidence is factually
insufficient to support the trial court=s
findings that he violated paragraphs (D) and (N) of section 161.001(1).  See Tex. Fam. Code Ann. ' 161.001(1);
Tex. R. App. P. 47.1; In re W.J.H., 111 S.W.3d 707, 715 (Tex. App.CFort
Worth 2003, pet. denied).

2.     Best Interest








In his fourth issue, Jason challenges the factual
sufficiency of the trial court=s
best-interest finding.  There is a strong
presumption that keeping a child with a parent is in the child=s best
interest.  In re R.R., 209 S.W.3d
112, 116 (Tex. 2006).  Prompt and
permanent placement of the child in a safe environment is also presumed to be
in the child=s best interest.  Tex. Fam. Code Ann. ' 263.307(a)
(Vernon 2002).  Nonexclusive factors that
the trier of fact in a termination case may use in determining the best
interest of the child include:

(A)    the
desires of the child;

 

(B)    the
emotional and physical needs of the child now and in the future;

 

(C)    the
emotional and physical danger to the child now and in the future;

 

(D)    the
parental abilities of the individuals seeking custody;

 

(E)    the
programs available to assist these individuals to promote the best interest of
the child;

 

(F)     the
plans for the child by these individuals or by the agency seeking custody;

 

(G)    the
stability of the home or proposed placement;

 

(H)    the
acts or omissions of the parent which may indicate that the existing parent‑child
relationship is not a proper one; and

 

(I)     any
excuse for the acts or omissions of the parent.

 

Holley v. Adams, 544 S.W.2d 367, 371B72 (Tex.
1976).








These factors are not exhaustive; some listed
factors may be inapplicable to some cases; other factors not on the list may
also be considered when appropriate.  C.H.,
89 S.W.3d at 27.  Furthermore, undisputed
evidence of just one factor may be sufficient in a particular case to support a
finding that termination is in the best interest of the child.  Id. 
On the other hand, the presence of scant evidence relevant to each
factor will not support such a finding.  Id.

In this case, there was no evidence of the
children=s
desires.  As for the physical and emotional
needs of and dangers to the children now and in the future, the record showed
that Jason had no present plan for providing for his children while he was in
jail and that the children were doing well in foster care.  Nor did Jason explain how he would provide a
stable home for his children now or upon his eventual release from jail.  He testified that he was willing to die for
his children if he could choose with whom they would live, but he could not say
who would take care of his children except for the vague statement that his
unnamed family members would not allow them to starve.  Nor did Jason maintain contact with the
children when he was incarcerated. 
During those rare intervals when Jason was not in jail, he demonstrated
poor parenting skills by exposing his children to drug traffic and violence in
the family home.








With regard to the programs available to assist
the persons caring for the children and the Department=s plans
for them, Rial testified that she attempted to set up services for Jason and
Starla repeatedly.  While Starla
attempted some services, Jason attempted none; nor did he request a service
plan while he was in jail.  Pike
testified that the children were adoptable and wanted to place all four of
Jason=s
children with one family.

From this evidence, a reasonable factfinder could
form a firm belief or conviction that termination of Jason=s
parental rights is in the children=s best
interest.  Thus, we hold that the
evidence is factually sufficient to support the trial court=s
best-interest finding, and we overrule Jason=s fourth
issue.

                                             Conclusion

Having overruled Jason=s second
and fourth issues, and not reaching his first and third issues, we affirm the
trial court=s termination order.

PER
CURIAM

 

PANEL:  GARDNER, J.; CAYCE, C.J.; and WALKER, J.

 

DELIVERED: March 5, 2009











[1]See Tex. R. App. P. 47.4.