

**NUMBER 13-10-588-CV**

**COURT OF APPEALS**

**THIRTEENTH DISTRICT OF TEXAS**

**CORPUS CHRISTI - EDINBURG**

---

**IN THE INTEREST OF M.L.N. AND A.S.N., CHILDREN**

---

**On appeal from the 135th District Court
of Victoria County, Texas.**

---

**MEMORANDUM OPINION**

**Before Justices Garza, Vela, and Perkes
Memorandum Opinion by Justice Vela**

This is an appeal from an order terminating the parental rights of appellant, R.A.N., to his two children, a son, M.L.N. and a daughter, A.S.N. In his sole issue on appeal, appellant argues that the trial court violated his right to equal protection under the fourteenth amendment of the United States Constitution because the reasons for termination were that appellant was an unemployed, indigent person with a disability.

*See* U.S. CONST. amend. XIV.   We affirm.

## I. BACKGROUND

The State, through the Texas Department of Family and Protective Services, filed its original petition on March 26, 2009, seeking managing conservatorship and potential termination of the parental rights of appellant, R.A.N., and D.R.N., the children's mother and appellant's wife.   After a hearing was held on March 17, 2010, the trial court terminated the mother's parental rights to the children.   With respect to appellant, the trial court stated:   "I'm going to continue a decision in [appellant's] termination for six months. At the end of six months if he has not reached a proficiency level that the professionals deem necessary for him to continue training to have the children returned to him, I'll terminate his rights."   The State later sought an order to dissolve the suspension of the earlier termination order and terminate appellant's parental rights.

On October 1, 2010, the trial court held a hearing on the State's request to terminate appellant's parental rights.   The trial court took judicial notice of its file, which included the order in which he terminated D.R.N.'s parental rights and suspended the termination order for six months with respect to appellant.   The trial court also admitted into evidence the entire transcription of the earlier hearing on the motion to terminate appellant's rights.   The trial court admitted into evidence the plan of service that had been set up for appellant to follow.   The plan included weekly counseling, addressing his own medication needs, maintaining safe and hazard-free housing, and the requirement that appellant be able to show he is able to financially care for the children.

2

Christy Hartly-Harvey, with the homemaker services program, testified at the October hearing, as well as at the initial hearing. At the October hearing, she testified that appellant had accomplished none of goals set forth for him in the service plan. He initially acquired a residence that was not adequate to house two small children. There was no running water, no electricity, the floor was rotting, and there were nails protruding from the base boards. She stated that she last saw appellant on August 17, and he missed an appointment on August 31. Since that time, she had not had contact with appellant. At the earlier hearing, when asked about the parenting abilities of appellant and his wife, Hartly-Harvey concluded that she did not believe "either one of them has the capability to parent their children effectively and nurturing—you know, being nurturing parents. I think they both have the desire but I don't think they have the capability." She felt that neither parent has the ability to teach the children right from wrong, to resolve conflicts, to teach them how to resolve conflicts, or to show the children proper affection.

Catherine Parsons-Key, a licensed professional counselor, testified at the October hearing that she began counseling with appellant in the middle of July. Appellant kept all of his weekly appointments with her from July 13 through August 24. On September 2, he did not come to his appointment and did not explain or reschedule. During the counseling sessions, she spoke with appellant about his background, including his mental illness and his childhood that had been spent in DPS care. She opined that during the time she counseled with him, no progress was made. He could not get the housing arranged and could not get anything accomplished outside of the counseling realm. Parsons-Key stated that she was not sure improvement would happen. Based

3

on the six sessions she had with appellant, she did not think more time would have helped, but qualified her answer by agreeing that it might have. She informed the trial court that she did not believe appellant was competent to raise and nourish two special needs children.

Alma Straney, the DPS caseworker assigned to appellant, testified that she took over his case in May 2010, visited with appellant at the apartment and noted he had cleaned the bathroom and the tub, but stated that the apartment was in no condition for children to live there. She testified that appellant did not fulfill the requirements of the plan of service. At the time of the October hearing, appellant was living on the streets. Straney noted that appellant visited with the children regularly, only missing one visit in September.

Appellant testified at the October hearing that he had stayed away from his wife since her rights had been terminated, returning only once to retrieve his personal items. He said he looked for a home and had been applying for jobs. In August, he moved out of the apartment because it was not manageable and the landlord was not making necessary repairs.

Prior to the October hearing, the trial court heard evidence that appellant had relinquished his parental rights to the two children in 2004. Evidence offered at the earlier hearing showed a pattern of violent altercations between appellant and his wife in the children's presence. According to D.R.N., she and appellant had arguments that the children witnessed. She described one instance where appellant grabbed her by the chain on her neck and attempted to choke her. Later, her daughter attempted to do the

4

same thing to her because she wanted to "be like daddy." Appellant testified that he had used drugs with his wife. He also testified that he receives disability benefits, has been hospitalized several times for psychological problems, has been arrested for possession of a controlled substance and criminal mischief, and has an addiction to pills.

At the earlier hearing, D.R.N. testified that the home was not a safe place for the children while she and her husband resided there. Appellant agreed that the children were not safe while the two of them were at home. The experts who testified at the earlier hearing all agreed that the parental rights of both parents should be terminated based on the fact that they had worked with both of them extensively and saw no progress with respect to parenting skills.

At the conclusion of the October 1, 2010 hearing, the trial court found that the appellant: (1) knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endanger the physical or emotional well-being of the children; (2) engaged in conduct which endangered the physical or emotional well-being of the children; and (3) failed to comply with the provisions of a court order that specifically established the actions necessary for him to have the children returned. The trial court also found that the State had made reasonable efforts to return the children to appellant.

## II. STANDARD OF REVIEW AND APPLICABLE LAW

In hearings regarding the termination of parental rights, due process requires that the State prove its case for termination by clear and convincing evidence. *In re J.F.C.,* 96 S.W.3d 256, 263 (Tex. 2002) (citing *Santosky v. Kramer,* 455 U.S. 745, 769 (1982); *In re G. M.,* 596 S.W.2d 846, 847 (Tex. 1980)). The clear and convincing standard is

5

defined as the "measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007 (West 2008). The Equal Protection Clause provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws," which directs that all persons similarly situated should be treated alike. U.S. CONST. amend. XIV, § 1; *In re J.M.C.*, 109 S.W.3d 591, 597 (Tex. App.–Fort Worth 2003, no pet.).

Taking this elevated standard of review into consideration, an appellate court, reviewing the legal sufficiency of the evidence in a parental termination case, must determine whether a fact-finder could have reasonably formed a firm belief or conviction that the grounds for termination were proven. *In re J.F.C.*, 96 S.W.3d at 265-66. All evidence should be reviewed "in the light most favorable to the judgment." *Id.* at 266. This means that an appellate court must assume that the fact-finder resolved any disputed facts in favor of its finding if a reasonable fact-finder could have done so. An appellate court must also disregard all evidence that a reasonable fact-finder could have disbelieved. *City of Keller v. Wilson,* 168 S.W.3d 802, 827 (Tex. 2005). "If [an appellate court] determines that no reasonable fact-finders could form a firm belief or conviction that the matter that must be proven is true, then that court must conclude that the evidence is legally insufficient." *In re J.F.C.,* 96 S.W.3d at 266.

Similarly, the clear and convincing standard of review in a parental termination hearing requires a higher level of evidence in order to be factually sufficient. *See In re C.H.,* 89 S.W.3d 17, 25 (Tex. 2002). The appellate standard for reviewing parental termination factual findings is whether the evidence is such that a fact-finder could have

6

reasonably formed a firm belief or conviction about the truth of the State's allegations. *Id.*

In reviewing the evidence for factual sufficiency, we must determine whether, on the entire record, a fact-finder could reasonably form a firm conviction or belief that the parent violated a provision of section 161.001(1) of the family code and that the termination of parental rights would be in the best interest of the child. *In re M.C.T.,* 250 S.W.3d 161, 168 (Tex. App.–Fort Worth 2008, no pet.) (citing *In re C.H.,* 89 S.W.3d at 28). "If, in light of the entire record, the disputed evidence that a reasonable fact-finder could not have credited in favor of the finding is so significant that a fact-finder could not have reasonably formed a firm belief or conviction in the truth of its finding, then the evidence is factually insufficient." *Id.* (citing *In re H.R.M.,* 209 S.W.3d 105, 108 (Tex. 2006)).

When termination is based on multiple grounds under section 161.001(1), a court of appeals must affirm the order if the evidence is sufficient to support any one of the grounds found by the district court. *See In re A.V.,* 113 S.W.3d 355, 362 (Tex. 2003).

### III. STATUTORY GROUNDS FOR TERMINATION OF PARENTAL RIGHTS

Section 161.001 of the Texas Family Code sets forth the grounds upon which the court may involuntarily terminate a parent-child relationship. TEX. FAM. CODE ANN. § 161.001 (West Supp. 2010).

The trial court may order termination if it finds by clear and convincing evidence that the parent has knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child. *Id.* § 161.001(1)(D). Endangerment is defined as exposing to loss or injury, to

7

jeopardize. *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.–Fort Worth 2003, no pet.). Under subsection (D), we examine the evidence related to the environment of the child to determine if the environment is the source of endangerment to the child's physical or emotional well-being. *In re D.T.*, 34 S.W.3d 625, 632 (Tex. App.–Fort Worth 2000, pet. denied).

The parent's conduct does not necessarily have to be directed at the child. *See Vasquez v. Tex. Dep't of Protective & Regulatory Servs.*, 190 S.W.3d 189, 195 (Tex. App.–Houston [1st Dist.] 2005, pet. denied). Conduct that subjects a child to a life of uncertainty and instability endangers a child's physical and emotional well-being. *See In re S.D.*, 980 S.W.2d 758, 763 (Tex. App.–San Antonio 1998, pet. denied). A parent's mental state may be considered in determining whether a child is endangered if that mental state allows the parent to engage in conduct that jeopardizes the physical or emotional well-being of the child. *In re J.I.T.P.,* 99 S.W.3d 841, 845 (Tex. App.–Houston [14th Dist.] 2003, no pet.); *see also In re C.M.B.,* 204 S.W.3d 886, 895 (Tex. App.–Dallas 2006, pet. denied). Abusive or violent conduct by a parent may produce an environment that endangers the physical or emotional well-being of the child. *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.–Fort Worth 2003, no pet.). The requisite endangerment may be found if the evidence shows a parent's course of conduct that has the effect of endangering the child's physical or emotional well-being. *See Smith v. Sims,* 801 S.W.2d 247, 250 (Tex. App.–Houston [14th Dist.] 1990, no writ).

In this case, the trial court found that appellant had: (1) knowingly placed or allowed the children to remain in conditions or surroundings which endanger the physical

8

or emotional well-being of the children; (2) engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangers the physical or emotional well-being of the children; and (3) failed to comply with the provisions of a court order that specifically established the actions necessary for the return of the children who have been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the children's removal from the parent under chapter 262 for the abuse or neglect of the children. *Id.* § 161.001(1)(D), (E), (O).

## IV. ANALYSIS

Here, appellant does not challenge any of the specific grounds that the trial court found to support its decision that appellant's rights should be terminated. Rather, appellant urges that he was denied equal protection because his rights were terminated based on poverty, unemployment and disability. Appellant does not point to any cases to show that he was denied equal protection. His only argument is that if he had more money and was not disabled, he would have had the resources to have his children returned to him. To assert an equal protection claim, a party must establish that the challenged statute resulted in him being treated differently than others similarly situated. *In re J.M.C.*, 109 S.W.3d at 597.

The trial court found three grounds upon which to terminate appellant's rights. And the grounds are supported by evidence, which was essentially unchallenged in this appeal. Appellant has not established that the statute resulted in him being treated differently. We have carefully reviewed this record. Looking at all of the evidence in the

9

light most favorable to the trial court's determination, we hold that a reasonable trier of fact could reasonably have formed a firm belief or conviction that appellant knowingly placed or allowed the children to remain in conditions or surroundings that endangered their physical well-being and that he engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered the children's physical or emotional well-being. Both legally and factually sufficient evidence support the trial court's findings under section 161.001(1)(D) and (E) of the Texas Family Code. TEX. FAM. CODE ANN. § 161.001(1)(D), (E). The evidence also established that appellant clearly failed to comply with the service plan, *id.* § 161.001(1)(O), and the evidence supports termination on this ground, as well. Because we find that the trial court did not rely solely upon appellant's poverty, disability, and employment status, but considered all of the relevant statutory factors to be utilized before terminating a parent's rights, we overrule appellant's sole issue.

## V. CONCLUSION

Having overruled appellant's sole issue, we affirm the judgment of the trial court.

ROSE VELA
Justice

Delivered and filed the
5th day of May, 2011.

10