

**IN THE
TENTH COURT OF APPEALS**

No. 10-23-00296-CV

**IN THE INTEREST OF A.S.-V.M.,
A CHILD,**

**From the 82nd District Court
Robertson County, Texas
Trial Court No. 22-04-21441-CV**

## MEMORANDUM OPINION

Mother and Father appeal the trial court's order terminating their parental rights to A.S.-V.M. Both parents challenge the legal and factual sufficiency of the evidence to support the finding that termination of their parental rights was in the child's best interest.[1] We affirm the judgment of the trial court.

---

[1] In a footnote, Mother makes the conclusory statement that she "disputes that the evidence is legally or factually sufficient to support a finding under [Texas Family Code Sections 161.001(b)(1)(D) and (b)(1)(E)]..." *See* TEX. FAM. CODE ANN. §§ 161.001(b)(1)(D), (b)(1)(E). She briefly explains that she does not raise sufficiency challenges to Grounds D and E as issues on appeal because only one predicate ground is required to support termination, and she concedes that the evidence is sufficient to support termination of her parental rights under Section 161.001(b)(1)(O). *See Id*. § 161.001(b)(1)(O). We note that the Texas Supreme Court has held that due process demands that we review the evidence supporting the findings underlying Grounds D or E when they are challenged on appeal even if we were to find that the evidence to support one of the other statutory grounds for termination was sufficient. *Interest of N.G.*, 577 S.W.3d 230 (Tex. 2019). However, the ruling in *N.G.* mandates review of the sufficiency of the evidence underlying

## Background

The Texas Department of Family and Protective Services ("the Department") received a report that A.S.-V.M. was present in her home when one person threw bleach in another person's face. Mother and A.S.-V.M. lived in the home with several other individuals. Father did not live in the home and was incarcerated at the time of the incident. During its investigation, the Department learned that Mother was currently on probation for a felony drug offense. At the suggestion of her probation officer, Mother was scheduled to check into an inpatient drug rehab facility to address her marijuana use. Because Mother believed that the rehab facility would not accept her for inpatient treatment based solely on marijuana use, she told the Department that she planned to use methamphetamine the next day, prior to checking into the facility, to ensure her admittance.

The Department took emergency custody of A.S.-V.M. and filed a petition to terminate Mother and Father's parental rights. After a bench trial, the trial court terminated Mother's parental rights under Texas Family Code Sections 161.001(b)(1)(D), (b)(1)(E), and (b)(1)(O), terminated Father's parental rights under Texas Family Code

Grounds D and E only "[w]hen a parent has presented the issue on appeal." *Id.* at 235. Mother specifically chose not to present the issue of sufficiency of the evidence supporting Grounds D and E, though her reasoning behind her decision is incorrect. Further, her footnote contains no substantive analysis, citations to the record, or supporting legal authority. *See* TEX. R. APP. P. 38.1(i). We "know of no authority obligating us to become advocates for a particular litigant through performing their research and developing their argument for them," and we will not entertain issues that are inadequately briefed. *See Id.*; *Tello v. Bank One, N.A.*, 218 S.W.3d 109,116 (Tex. App.—Houston [14th Dist. 2007, no pet.); *see also Fredonia State Bank v. Gen. Am. Life Ins. Co.*, 881 S.W.2d 279, 283-84 (Tex. 1994).

Sections 161.001(b)(1)(D), (b)(1)(E), and (b)(1)(Q), and found that termination of Mother

and Father's parental rights was in the best interest of A.S.-V.M. *See* TEX. FAM. CODE ANN.

§§ 161.001(b)(1)(D), (b)(1)(E), (b)(1)(O), (b)(1)(Q), (b)(2). Mother and Father timely filed

separate notices of appeal, and the trial court filed findings of fact and conclusions of law.

STANDARD OF REVIEW

In conducting a legal sufficiency review in a parental termination case:

> [A] court should look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. To give appropriate deference to the factfinder's conclusions and the role of a court conducting a legal sufficiency review, looking at the evidence in the light most favorable to the judgment means that a reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so. A corollary to this requirement is that a court should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible. This does not mean that a court must disregard *all* evidence that does not support the finding. Disregarding undisputed facts that do not support the finding could skew the analysis of whether there is clear and convincing evidence.

*In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (per curiam) (quoting *In re J.F.C.*, 96 S.W.3d

256, 266 (Tex. 2002)) (emphasis in original).

In a factual sufficiency review, a court of appeals must give due consideration to

evidence that the factfinder could reasonably have found to be clear and convincing. *Id.*

> [T]he inquiry must be "whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations." A court of appeals should consider whether disputed evidence is such that a reasonable factfinder could not have resolved that

> disputed evidence in favor of its finding. If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient.

*Id.* (footnotes and citations omitted); *see In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002).

APPLICABLE LAW

There is a strong presumption that a child's best interests are served by maintaining the parent-child relationship. *Jordan v. Dossey*, 325 S.W.3d 700, 729 (Tex. App.—Houston [1st Dist.] 2010, pet. denied). However, while parental rights are of constitutional magnitude, they are not absolute. *Id.* The non-exhaustive list of factors that have been consistently considered in determining the best interest of the child were set out in the Texas Supreme Court's opinion, *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). These factors are: (1) the child's wishes; (2) the child's emotional or physical needs now and in the future; (3) the emotional or physical danger to the child now and in the future; (4) the parenting abilities of the parties seeking custody; (5) programs available to help those parties; (6) plans for the child by the parties seeking custody; (7) the stability of the proposed placement; (8) the acts or omissions of the parent that indicate that the existing parent-child relationship is not proper; and (9) any excuses for the acts or omissions of the parent. *See Id.* The *Holley* factors focus on the best interest of the child, not the best interest of the parent. *In re S.L.*, 421 S.W.3d 34, 38 (Tex. App.— Waco 2013, no pet.). There is no requirement that every factor must be proved as a

condition precedent to parental termination, and the absence of evidence about some factors does not preclude a factfinder from reasonably forming a strong conviction that termination is in the child's best interest. *See In re C.H.*, 89 S.W.3d at 27.

DISCUSSION

Both parents contend that evidence is insufficient to sustain a best-interest finding if alternatives to termination exist (e.g., naming the parents as non-managing conservators) and those alternatives are not expressly considered by the trial court. However, a separate consideration of alternatives to termination is not required, and available alternatives to termination do not preclude a finding that termination is in the child's best interest. *See T.W. v. Tex. Dept. of Fam. & Prot. Servcs.*, 431 S.W.3d 645, 651 (Tex. App.—El Paso 2014, no pet.). We therefore review the record to determine whether the evidence was legally and factually sufficient to support the trial court's best-interest finding as to each parent. *See* TEX. FAM. CODE ANN. § 161.001(b)(2).

Sufficiency of the Evidence Supporting Mother's Best-Interest Finding

The trial court found that Mother used marijuana during her pregnancy with A.S.-V.M and that Mother used methamphetamine before and during this case. An admission of or test result indicating the use of illegal drugs by an expectant mother during her pregnancy is a fact from which a factfinder could reasonably find that she poses a danger to the emotional and physical well-being of her child now and in the future. *See In re A.C.*, 394 S.W.3d 633, 642 (Tex. App.—Houston [1st Dist.] 2012, no pet.). Further, a

parent's decision to use illegal drugs while the termination suit is pending, when she knows she is at risk of losing her child, is relevant in determining whether a parent poses a present or future risk of physical or emotional danger to the child. *See In re S.N.*, 272 S.W.3d 45, 52 (Tex. App.—Waco 2008, no pet.). Mother admitted to marijuana use during her pregnancy and A.S.-V.M. tested positive for marijuana at birth. Mother testified that she did not believe marijuana use during pregnancy was dangerous to the child and admitted to continued marijuana use during the pendency of the case.

In addition to her marijuana use, Mother struggled with methamphetamine addiction. Her admission that she planned to use methamphetamine precipitated the Department's emergency removal of A.S.-V.M., and Mother tested positive for methamphetamine approximately two months before trial. Though Mother asserted at trial that she had not used methamphetamine since her most recent positive drug test, evidence of a recent turnaround should be determinative only if it is reasonable to conclude that rehabilitation, once begun, will surely continue. *See In re M.G.D.*, 108 S.W.3d 508, 514 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). The record before us does not provide such assurance. Mother admitted that she relapsed on methamphetamine multiple times during the pendency of this case. According to the Department, her first documented relapse was shortly after her release from the first inpatient drug rehab facility. Mother took the initiative to check herself back into rehab, but relapsed again after she was released. Despite her rehabilitation efforts, Mother

persisted in using drugs to self-medicate, knowing that her parental rights to her child were in jeopardy.

The trial court also found that Mother did not maintain a safe and stable home. A parent's drug use is a condition indicative of instability in the home environment because it exposes the child to the possibility that the parent may be impaired or imprisoned. *See In re J.F.-G.*, 612 S.W.3d 373, 386 (Tex. App.—Waco 2020), *aff'd*, 627 S.W.3d 304 (Tex. 2021). At trial, Mother acknowledged that it would be difficult for the court to trust that she would not use drugs again. *See In re D.S.*, 333 S.W.3d 379, 384 (Tex. App.—Amarillo 2011, no pet.) (Noting that a trial court may measure a parent's future conduct by her past conduct when determining the best interest of the child.). When asked if she was requesting the trial court to return A.S.-V.M. to her care, Mother testified that she wanted A.S.-V.M. to go to her mother or mother-in-law "until we can get our stuff together." Further, Mother planned to live in the same home from which A.S.-V.M. was removed when this case was initiated. Even after A.S.-V.M.'s removal, the Department noted a consistent smell of marijuana while standing on the front porch that kept the caseworker from entering the home. While Mother testified that she would be willing to move to a different residence, she did not provide any specific alternate living arrangements she had considered.

Finally, when children are too young to express their desires, the factfinder may consider that the children have bonded with the caregiver, are well-cared for by them,

and have spent minimal time with a parent. *Interest of J.D.*, 436 S.W.3d 105, 118 (Tex. App. – Houston [14th Dist.] 2014, no pet.). At the time of trial, A.S.-V.M. was three years old. Mother had no contact with A.S.-V.M. for approximately one year. The evidence suggests that Mother had not participated in any visitation with A.S.-V.M. because she did not provide two clean drug tests. Meanwhile, A.S.-V.M. had been in her familial placement for approximately six months and referred to her caregivers as "mom" and "dad." The Department testified that A.S.-V.M. had been in "significant therapies, from the trauma she's endured" and that the current caregivers were appropriately addressing her emotional needs and behavioral concerns.

Considering the evidence pursuant to the standards listed above, we find that the evidence was legally and factually sufficient for the trial court to have found that termination of Mother's parental rights was in A.S.-V.M.'s best interest. We overrule Mother's sole issue on appeal.

<u>Sufficiency of the Evidence Supporting Father's Best-Interest Finding</u>

Evidence relating to the predicate grounds under Texas Family Code Section 161.001(b)(1) may be relevant to determining the best interest of the children. *See In re C.H.*, 89 S.W.3d at 28; *See* TEX. FAM. CODE ANN. § 161.001(b)(1). The trial court found Section 161.001(b)(1)(D) (knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child) and Section 161.001(b)(1)(E) (engaged in conduct or knowingly placed the child

with persons who engaged in conduct which endangers the physical or emotional well-being of the child) as two of the predicate grounds supporting Father's termination of parental rights. *See* TEX. FAM CODE ANN. §§ 161.001(b)(1)(D), (b)(1)(E). A parent endangers his child by accepting the endangering conduct of other people. *See Interest of L.W.*, No. 01-18-01025-CV, 2019 WL 1523124, at *20 (Tex. App.—Houston [1st Dist.] Apr. 9, 2019, pet. denied) (mem. op.). This includes a parent's exposure of his child to illegal narcotics use by a person in the child's home. *Id*. Father testified that he often used methamphetamine in his relationship with Mother. Father also testified that he believed it was dangerous for Mother to use any type of drug while pregnant with A.S.-V.M. Nonetheless, he admitted that he and Mother were using marijuana together – knowing she was pregnant with A.S.-V.M. – to wean themselves off of methamphetamine. He was aware that A.S.-V.M. tested positive for marijuana at birth. Although he knew that Mother was still struggling with drug addiction when he went to prison eight months later, Father left A.S.-V.M. in Mother's care. *See In re J.J.*, 07-13-00117-CV, 2013 WL 4711542, at *9 (Tex. App.—Amarillo Aug. 29, 2013, no pet.) (mem. op.) (considering evidence that a parent left the child in the care of a known drug abuser in evaluating sufficiency of the evidence supporting a best-interest finding).

A parent's imprisonment can negatively impact a child's emotional well-being. *See In re J.F.-G.*, 612 S.W.3d 373 at 388. A parent's history and inability to maintain a lifestyle free from arrests and incarcerations are relevant to the best-interest determination. *See In*

*re D.M.*, 58 S.W.3d 801, 814 (Tex. App.—Fort Worth 2001, no pet.). Father's criminal history began when he was a juvenile and spanned almost twenty years. In 2010, Father served almost all of his prison sentence on an Aggravated Robbery charge after failing to successfully complete his deferred adjudication probation. *See* TEX. PENAL CODE ANN. § 29.03. The trial court also found Section 161.001(b)(1)(Q) of the Texas Family Code as a predicate ground supporting Father's termination. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(Q) (knowingly engaged in criminal conduct that resulted in the parent's conviction of an offense and imprisonment and inability to care for the child for not less than two years from the date the petition is filed). In October of 2020, Father was sentenced to eight years in prison on an Injury to the Elderly charge. *See* TEX. PENAL CODE ANN. § 22.04. At the time of trial, Father had been incarcerated for the majority of A.S.-V.M.'s life, was still incarcerated on the Injury to the Elderly charge, and had no relationship with A.S.-V.M. since she was eight months old.

A parent's violent criminal conduct after the child is born is also relevant in reviewing a best-interest finding. *See Interest of M.T.R.*, 579 S.W.3d 548, 568-69 (Tex. App.—Houston [14th Dist.] 2019, pet. denied). Father's Injury to the Elderly charge stemmed from Father striking his elderly father-in-law twice above the eye with his fist. The altercation occurred in the parking lot of the hospital while waiting for A.S.-V.M. to be discharged after she was born. Father admitted he had been drinking prior to the dispute in an attempt to avoid methamphetamine relapse. Additionally, a parent's abuse

of the other parent can be used to support a finding of endangerment and is also relevant to determining the child's best interest. *See In re C.J.O.*, 325 S.W.3d 261, 265 (Tex. App.—Eastland 2010, pet. denied). Father was arrested for misdemeanor assault family violence against Mother at the same time he was arrested for assaulting his father-in-law.

Finally, the trial court found that Father could not provide A.S.-V.M. with a safe and stable home. Father testified that he expected to be granted parole on his Injury to the Elderly charge in January 2024 because he would have served approximately half of his prison sentence at that time. However, a parent's testimony about parole eligibility, even if undisputed, is generally not binding on a factfinder because parole decisions are inherently speculative and rest entirely in the parole board's discretion. *See Interest of J.M.G.*, 608 S.W.3d 51, 56 (Tex. App.—San Antonio 2020, pet. denied). Father had already been denied parole twice on this charge, and he agreed with the trial court that he was unable to provide for A.S.-V.M. while he was incarcerated. Although his mother, P.L., testified she was willing to care for A.S.-V.M. until Father's release from prison, permanence is of paramount importance in considering a child's present and future needs, and prompt and permanent placement of the child in a safe environment is presumed to be in the child's best interest. *See In re M.C.T.*, 250 S.W.3d 161, 170 (Tex. App.—Fort Worth 2008, no pet.); *See Interest of B.C.S.*, 479 S.W.3d 918, 927 (Tex. App.—El Paso 2015, no pet.). A.S-V.M. had been safe and bonded with her court-ordered family placement for six months. Her attorney ad litem argued that A.S.-V.M. was doing

extremely well in her placement and that it would not be in her best interest to be moved to the home of another caregiver.

The trial court's finding that termination of Father's parental rights is in A.S.-V.M.'s best interest was supported by legally and factually sufficient evidence. We overrule Father's sole issue on appeal.

## Conclusion

Having overruled Mother's and Father's issues on appeal, we affirm the judgment of the trial court.

STEVE SMITH
Justice

Before Chief Justice Gray,
      Justice Johnson, and
      Justice Smith
Affirmed
Opinion delivered and filed March 28, 2024
[CV06]

